## MOORE *v.* BROWN.

*(Supreme Court, General Term, Third Department.* November 30, 1891.)

1 MINES—WHAT CONSTITUTES A CONVEYANCE—EXECUTORY CONTRACT.

Plaintiff's grantors discovered a garnet mine on public land, and acquired the right from the state to work the mine on royalty, but before obtaining such right they entered into a contract with defendant by which they agreed "for and in consideration of $5 per 2,240 pounds royalty, * * * to sell all or 50 tons of garnet out of the land shown me [defendant,] * * * with privilege to mine each and every year till all gone," etc. Plaintiff's grantors repudiated this contract, notwithstanding which defendant took possession of the mine. *Held,* that the contract under which defendant claimed was not a conveyance, but merely an executory contract, giving defendant no title to the interest of plaintiff's grantors in the mine, nor right to the possession thereof.

2. SAME—EXPENDITURES BY CLAIMANT.

The fact that defendant had made expenditures in developing the mine and in assisting plaintiff's grantors in obtaining title thereto from the state did not

strengthen his claim to ownership of the mine under such contract, his remedy in respect of such expenditures being by action to recover the same against plaintiff's grantors, if made at their request.

3. SAME—EJECTMENT—TITLE ACQUIRED FROM THE STATE.
    The right to minerals on public lands, acquired under Laws 1890, c. 411, which provides that any citizen who shall discover any valuable mine or mineral on the public lands and shall file a certain notice "shall be entitled to work such mine, and he and his heirs and assigns shall have the sole benefit of all products therefrom upon the payment into the state treasury of a royalty," includes the fee in the minerals, and the grantee of the person who had acquired such right may maintain ejectment for the possession of the mine.

4. CHAMPERTY—CONVEYANCE OF LAND IN POSSESSION OF THIRD PERSON—EVIDENCE.
    Plaintiff claimed title to a mine under a conveyance executed to him while a third person was in possession of the mine, claiming under an instrument executed by plaintiff's grantors, which was not a conveyance, but merely an executory contract for the sale of products of the mine. *Held*, that defendant, having no title whatever to the mine, was not in possession thereof under a title adverse to that of plaintiff's grantors, and that, therefore, their conveyance to plaintiff was not champertous.

Appeal from circuit court, Essex county.

Action by William Moore against Simeon Brown. The complaint alleged that in January 1890, George H. Wood and Adolphus Shields, citizens of this state, discovered a garnet mine upon lands belonging to the people of the state, in the town of Minerva, (describing the lands,) being about six acres; that previous to December 23, 1890, they duly filed in the office of the secretary of state a notice of said discovery, with a description of said lands, and on said December 23, 1890, they filed with the commissioners of the land-office a petition that consent be given them to open and work said mine as provided by law; that on that day said petition was granted, and said consent duly given them, by said commissioners. These allegations of the complaint were admitted by the answer, and the proceedings are set forth in full in the case. The complaint further alleged, and the fact was proved, that Wood and Shields, April 14, 1891, by deeds of conveyance, granted and transferred to the plaintiff all their rights, title, and interest in and to said mine and premises. The complaint further alleged that April 6, 1891, the defendant wrongfully entered into possession of said premises, and since then, by his servants, has held possession thereof; that April 14, 1891, the plaintiff demanded of the defendant delivery to him of such possession, which the defendant then refused, and still refuses, to plaintiff's damage $500. Judgment was demanded for the possession of the premises and for damages for withholding them. Defendant, by his answer, admitted his possession, and justified it under a contract with Wood and Shields, setting forth the same. It was shown by the evidence that when Wood and Shield discovered this mine they supposed it was upon the land of one Connors, and they obtained from him the supposed right to work it, and commenced working it. While thus engaged, June 11, 1890, the defendant made the following contract with them, in writing, not under seal:

"This article of agreement or contract, made and entered into this 11th June, 1890, by and between George H. Wood and Dolph Shields, of the town of Johnsburgh, N. Y., parties of the first part, and Simeon Brown, of the 2d part, same town and state, witnesseth as follows: The said parties of the first part, for and in consideration of five dollars per 2,240 pounds royalty, hereby agree to sell all or 50 tons of garnet out of the land shown me on lands said to belong to Mart Connors, situate in town of Minerva, Essex county, N. Y., with privilege to mine each and every year till all gone; and if said parties of the first part should at any time mine any garnet elsewhere on lands of Connors said Brown shall have the first refusal of it at the going market price; and, if ever mined on royalty, said Brown shall have first refusal. Said Brown to take what garnet is now dug at $20 per every 2,240 pounds or gross ton. Said parties of the first part to allow said Brown the

first 20 tons of garnet free from charge; to make roads and open mine; all garnet to be paid for when weighed.   To all the above we all agree.   Said mine on the east side of the brook.                              GEO. H. WOOD.
                                                            "DOLPH SHIELDS.
                                                            "SIMEON BROWN."

Wood and Shields testified that on the following day they became dissatisfied with the contract, and told defendant they would not stand to it; that the royalty was too low, and the weight per ton too high.   They testified that they did not read the contract; that the defendant read it as for 50 tons, and no more.   Defendant proposed that they make a new one, and have Waldron, a person who did legal business in that neighborhood, draw it.   This was not done.   Wood and Shields soon ascertained that the land upon which the mine was, belonged to the state, and not to Connors, and they then took the proceedings which resulted in procuring the consent of the commissioners of the land-office.   The defendant assisted in the proceedings resulting in obtaining the consent of the commissioners, and incurred expenses in so doing to the amount of $76.22.   He testified that he did this under an agreement with Wood and Shields that the existing contract in writing between them should be valid in case the state allowed their claim.   Wood and Shields testified that they requested defendant to go to Albany to assist in obtaining the consent of the state, but deny that they agreed to continue the contract with him if the state allowed their claim; that they told defendant before the claim was allowed that his services were no longer required.   The defendant rendered them a bill for the same, amounting to $116.22.   The bill was produced in evidence.   Wood and Shields, however, conceded that they told defendant they would allow him an interest in the mine if the state allowed their claim. The defendant was working the mine when Wood and Shields conveyed to the plaintiff, and when this action was commenced.

From a judgment of nonsuit plaintiff appeals.   Reversed.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*King & Ashley*, (*Richard L. Hand*, of counsel,) for appellant.   *J. W. Houghton*, for respondent.

LANDON, J.   Chapter 411, Laws 1890, amending 1 Rev. St. p. 281, §§ 2, 7, provides that all mines, minerals, and fossils discovered, or hereafter to be discovered, upon any lands belonging to the people of the state, are the property of the people.   "Any citizen of this state who shall have discovered or who may hereafter discover any valuable mine or mineral upon said lands, and shall file the notice in this title required, shall be entitled to work such mine, and he and his heirs and assigns shall have the sole benefit of all products therefrom, upon payment into the state treasury of a royalty of two per centum of the market value of all such products."   "Sec. 2. Nothing contained in this title shall   *   *   *   be construed to give any person a right to enter on or break up the lands of any other person or of the people of the state, or to work any mine in such lands, unless the consent in writing of the owner thereof, or of the commissioners of the land-office where the lands belong to the people of this state, shall be previously obtained."   Wood and Shields became entitled "to work such mine," and "have the sole benefit of all products therefrom."   They had the right "to enter on" and "break up the lands." Their rights were exclusive.   The state retained the title to the soil, but granted to Wood and Shields the full beneficial interest in the minerals, and the exclusive right of possession of the lands for the purpose of working the mine.   The state granted nothing to the defendant, and the defendant has no right except what he holds under Wood and Shields.   Defendant seeks in this trial to cut down the grant to Wood and Shields, in order to appropriate to himself as a means of defense whatever of title remains to the state.   He owns nothing under that reserved title, and is not in a position to invoke the

rules of strict construction of a public grant which may be invoked by the sovereign or its grantees to resist the unjust encroachment of the subject. We think Wood and Shields acquired from the state the right of exclusive possession of the lands in question, certainly as against every one except the state or its grantees of some right in them consistent with the right of Wood and Shields. The defendant's possession, if not warranted by contract with Wood and Shields, is not consistent with their rights, and is in exclusion of them. Wood and Shields had more than the mere use of the land; they owned, for the purposes of removal and sale, the mineral, and, subject to the payment of royalty to the state, had an estate in fee therein. *Genet* v. *President, etc.*, 122 N. Y. 505, 527, 25 N. E. Rep. 922. Ejectment is, therefore, the proper remedy. *Rowan* v. *Kelsey*, 18 Barb. 484; *Jackson* v. *Buel*, 9 Johns. 298; *Jackson* v. *May*, 16 Johns. 184. Defendant cites cases of easements. An easement is not a title to land or of an interest in land within the meaning of the statute authorizing ejectment. *Child* v. *Chappell*, 9 N. Y. 246, 251; *Wicklow* v. *Lane*, 37 Barb. 244.

Defendant could not, upon the evidence, claim any title to the mine. The contract in writing between him and Wood and Shields was not a conveyance, and did not purport to be. It was an executory contract for the sale by them to him of "all or fifty tons of garnet out of the land shown me, * * * with privilege to mine each and every year until all gone." Assuming the validity of this agreement,—and, if free from fraud, it was valid,—Wood and Shields had their election either to observe it or violate it and answer in damages. *Clark* v. *Marsiglia*, 1 Denio, 317; *Lord* v. *Thomas*, 64 N. Y. 107; *Parr* v. *Village of Greenbush*, 112 N. Y. 246, 19 N. E. Rep. 684. The testimony tends to show that they did refuse to perform, or to allow the defendant to perform, and the defendant, with full knowledge of the fact, took possession of the mine. If such was the case,—and, if there was any question about it, it was for the jury to determine it,—the defendant entered at his peril, and could establish no equities by his subsequent expenditures. The parties fell into a dispute respecting the future performance of an executory contract relative to the working of the mine, and Wood and Shields refused performance. The defendant's remedy was not to enforce performance by the strong hand, but to seek redress in damages. The defendant rendered services and expended money in securing for Wood and Shields the consent of the state. There is a question whether he was to have his pay in garnet from the mine or otherwise, or whether his services and expenditures were in aid of the contract which he had made with Wood and Shields, and were bestowed upon their promise to recognize the contract in case the state allowed their claim. The defendant took different positions respecting his services and expenditures. His remedy, if they were rendered at the request of Wood and Shields, is an action to recover for them. If there are equitable considerations, such as the insolvency of Wood and Shields, the expenditure of money and services at their request in securing for them the title to the mine upon their promise of their performance of the contract, and the inability to measure the value of the contract in advance of the actual working of the mine, and these require a specific performance of the contract, then it may well be that the defendant was justified in taking possession of the mine, if done peaceably, since the law will justify what it will award. But the answer was not framed in that aspect, nor the evidence addressed to it. Defendant urges that the deed to plaintiff was void for champerty. But defendant was not in possession of the mine, claiming under a title adverse to Wood and Shields, for he had no title whatever, good or bad. He went into possession on his own showing under Wood and Shields, and under their title, and therefore not under an adverse title. *Dawley* v. *Brown*, 79 N. Y. 390. He was at best but their licensee, and they revoked the license by their sale to the plaintiff. Still the plaintiff knew all the facts, and, if there were any equi-

ties which would disable Wood and Shields from revoking the license, they would be valid against the plaintiff. The judgment is reversed, new trial granted, costs to abide the event. All concur.