WILLIAM H. ARMSTRONG, Appellant, *v.* LAKE CHAMPLAIN
    GRANITE COMPANY, Respondent.

| 147 | 495 |
| s 148 | 738 |
| 147 | 495 |
| 172 | [2]159 |

1. GRANITE — CONVEYANCE OF MINERAL ORES.   Granite is not a mineral ore in either a popular or scientific sense, and does not pass under a conveyance of "mineral ores."

2. DEED OF MINERALS — MEANING OF WORDS — STATEMENTS OF PARTIES.   The interpretation of the words "minerals and ores" in a deed cannot be controlled in an action which is not brought to reform the deed but to determine the rights of the parties under the instrument as written, by testimony of the purpose of the grantees in acquiring the property, or of their statements made contemporaneously with the deed that they had purchased the iron ore on the premises. ·

3. USAGE — MEANING OF WORD "MINERALS."   Evidence of certain persons who lived or had property in the locality in which mineral property was situated, that the word "minerals" in a conveyance of such property was understood "about there" to mean iron ores, without proof that any transaction had taken place based upon such usage, or that such usage was known to either of the parties to the conveyance in which the word is used, will not be sufficient to establish a settled and recognized usage which will override the legal meaning of the word.

4. GRANITE — CONVEYANCE OF MINERALS.   Granite is embraced in a reservation or grant of "minerals" in the absence of any qualification of the meaning of that word; but it will not pass by a grant of "minerals and ores" when these words are connected with a context which clearly indicates that the parties had in view only such minerals as are to be got by mining in the ordinary sense of that term, that is, by underground and not by open workings.   Such is the case where a grant is made of "all the minerals and ores with the right to mine and remove the same; also, the right to sink shafts and sufficient surface to erect suitable buildings for machinery and other buildings necessary and usual in mining and raising ores; also, the right of ingress and egress for mining purposes and to make explorations for minerals and ores."

Mem. of decision below, 71 Hun, 614.

(Argued October 24, 1895; decided November 26, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 9, 1893, which affirmed a judgment in favor of defendant, dismissing the complaint upon the merits,

entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Richard L. Hand* for appellant. The plaintiff established title to all of the granite on lot No. 27. Minerals and ores may be held by perfect title in fee as distinct from the soil. (*Ryckman* v. *Gillis,* 57 N. Y. 68, 73.) The conveyance of "all the minerals and ores" vested in the grantees all granite in the premises. (*Dwight* v. *G. L. Ins. Co.,* 103 N. Y. 341; *Brady* v. *Cassidy,* 104 N. Y. 155; *Humphreys* v. *N. Y., L. E. & W. R. R. Co.,* 121 N. Y. 435; *Serat* v. *Smith,* 61 Hun, 36; Boone on Real Prop. § 6; 4 Wait's Act. & Def. 421; McSweeny on Mines, 12; Bainbridge on Mines, 4; 2 Washb. on Real Prop. [2d ed.] § 5; *Rosse* v. *Wainman,* 14 M. & W. 859; *Micklethwait* v. *Winter,* 6 Exch. 644; *M. R. Co.* v. *Checkley,* L. R. [4 Eq.] 19; *Bell* v. *Wilson,* L. R. [1 Ch. App.] 303; *Hext* v. *Gill,* L. R. [7 Ch. App.] 699; *Tucker* v. *Linger,* L. R. [21 Ch. Div.] 18; *Jersey* v. *Guardians, etc.,* L. R. [21 Q. B. Div.] 555; *M. R. Co.* v. *Robinson,* L. R. [37 Ch. Div.] 386; *Provost of Glasgow* v. *Farie,* L. R. [13 App. Cas.] 657; *Gesner* v. *G. Co.,* 1 James [N. S.], 72; *Hartwell* v. *Camman,* 2 Stock. Ch. 128; *Gibson* v. *Tyson,* 5 Watts, 34; *Caldwell* v. *Copeland,* 37 Penn. St. 427; *Thompson* v. *Noble,* 3 Pittsb. 201; *Stoughton's Appeal,* 88 Penn. St. 198; *Dark* v. *Johnson,* 55 Penn. St. 164; *Doster* v. *F. Z. Co.,* 21 Atl. Rep. 251; *Davis* v. *Wiebbold,* 139 U. S. 507; *Deffeback* v. *Hawke,* 115 U. S. 392; Copp's U. S. Min. Lands, 50; *Moore* v. *Brown,* 139 N. Y. 127; *F. N. Bank of Richburg* v. *Dow,* 41 Hun, 13; *Marvin* v. *B. I. Co.,* 55 N. Y. 538.) The construction of Baldwin's deeds to Bridgford and Randalls, by which the meaning of the words is so limited as to exclude granite, is erroneous and should not be allowed to stand. (*Van Nostrand* v. *Moore,* 52 N. Y. 12; *Voorhees* v. *Burchard,* 55 N. Y. 98; *Genet* v. *D. & H. C. Co.,* 122 N. Y. 505, 520; *Jackson* v. *Tibbetts,* 9 Cow. 241,

250; Broom's Leg. Max. 617; *Lanyon* v. *Carne*, 2 Saund. 165; *House* v. *Walch*, 144 N. Y. 420; *Flora* v. *Anderson*, 67 Fed. Rep. 182; *Wilson* v. *Deen*, 34 N. Y. 531; *Eighmie* v. *Taylor*, 98 N. Y. 288; *Long* v. *M. I. Co.*, 101 N. Y. 638; *Corse* v. *Peck*, 102 N. Y. 513; *Drew* v. *Swift*, 46 N. Y. 204; *F., etc., Bank* v. *Logan*, 74 N. Y. 568; *Armstrong* v. *Dubois*, 90 N. Y. 95; *Jackson* v. *Sill*, 11 Johns. 201; *Paul* v. *Lewis*, 4 Watts, 402; *Harvey* v. *Vandergrift*, 89 Penn. St. 346; *Hellner* v. *Imbrie*, 6 Serg. & R. 400; *Buck* v. *Fisher*, 4 Whart. 516; *Moran* v. *Prather*, 23 Wall. 492; *Odine* v. *N. E. M. Ins. Co.*, 101 Mass. 551; *Brady* v. *Cassidy*, 104 N. Y. 147; *Humphreys* v. *N. Y., L. E. & W. R. R. Co.*, 121 N. Y. 444; *Caldwell* v. *Fulton*, 31 Penn. St. 475; *Hartwell* v. *Camman*, 10 N. J. Eq. 128; *Atkinson* v. *Truesdell*, 127 N. Y. 230; *Bradley* v. *Wheeler*, 44 N. Y. 495; *Higgins* v. *Moore*, 34 N. Y. 417; *Dickinson* v. *Poughkeepsie*, 75 N. Y. 65; *Putman* v. *Stewart*, 97 N. Y. 411; *Bedell* v. *Kennedy*, 109 N. Y. 157; *Jackson* v. *Hudson*, 3 Johns. 375, 387; *Jackson* v. *Blodgett*, 16 Johns. 172; *Jackson* v. *Gardner*, 8 Johns. 308; *Coleman* v. *Beach*, 97 N. Y. 545; *Hathaway* v. *Power*, 6 Hill, 453, 457; *L. I. R. R.* v. *Conklin*, 32 Barb. 381, 386; Boone on Real Prop. §§ 6, 304; *Clute* v. *N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 272; U. S. R. S. § 2320; *Jackson* v. *Roby*, 109 U. S. 440; *Jameson* v. *Kirk*, 98 U. S. 453; *Erhardt* v. *Boaro*, 113 U. S. 527; *S. Co.* v. *Kemp*, 104 U. S. 636, 650; Morrison's Min. Rights, 150, 285; *Moore* v. *Brown*, 139 N. Y. 127; 1 Am. & Eng. Ency. of Law, 504; 4 Wait's Act. & Def. 421; McSweeny on Mines, 12; Bainbridge Law of Mines & Min. 4; *Rosse* v. *Wainman*, 14 M. & W. 859; *M. R. Co.* v. *Robinson*, L. R. [37 Ch. Div.] 386; *Doster* v. *F. Z. Co.*, 21 Atl. Rep. 251; U. S. R. S., chap. 6; *F. N. Bank of Richburg* v. *Dow*, 41 Hun, 15; *C. Co.* v. *Mellon*, 25 Atl. Rep. 598.) Evidence as to how others understood similar deeds was inadmissible. (*Newhall* v. *Appleton*, 124 N. Y. 668.) The defense of champerty has no foundation. (*Dawley* v. *Brown*, 79 N. Y. 396; *Higinbotham* *Stoddard*, 72 N. Y. 100; *Stoddard* v. *Whiting*, 46 N. Y. 634;

*Corning* v. *T.*, etc., *Factory*, 39 Barb. 321 ; *Stevens* v. *Hauser*, 39 N. Y. 302 ; *Learned* v. *Tallmadge*, 26 Barb. 454 ; *Moody* v. *Moody*, 16 Hun, 191 ; *Danziger* v. *Boyd*, 120 N. Y. 628 ; *A. B. N. Co.*, v. *N. Y. El. R. R.*, 129 N. Y. 263 ; *Allen* v. *Welsh*, 18 Hun, 226 ; *Morford* v. *Davis*, 28 N. Y. 481 ; *Milbank* v. *Jones*, 127 N. Y. 370, 376 ; *Porter* v. *Wormser*, 94 N. Y. 431, 450 ; *Honegger* v. *Wettstein*, 94 N. Y. 252 ; *Hamer* v. *Sidway*, 124 N. Y. 548 ; *Wells* v. *Monihan*, 129 N. Y. 164 ; *Erving* v. *Mayor*, etc., 131 N. Y. 133.) The action was properly brought for the injunction prayed for. ( *W. P. I. Co.* v. *Reymert*, 45 N. Y. 703 ; *A. O. Co.* v. *B. O. Co.*, 21 Hun, 26; 86 N. Y. 638 ; *Broiestedt* v. *S.*, etc., *R. R. Co.*, 55 N. Y. 220; *Livingston* v. *Reynolds*, 26 Wend. 115 ; *Spear* v. *Cutter*, 5 Barb. 486.) An interlocutory decree should have been made, establishing the rights of the plaintiff, enjoining the defendant and directing an accounting by the defendant for the injury already done. ( *Weatherby* v. *Wood*, 29 How. Pr. 404.)

*Chester B. McLaughlin* for respondent. All the interest that plaintiff has in lot 27 is that acquired by Bridgford and the Randalls from Baldwin under the deed of March 30 and May 18, 1871, and his claim must be based upon one or the other, or both of those deeds, neither of which transferred any interest in the granite. (15 Am. & Eng. Ency. of Law, 500.) The meaning of the word "minerals," if taken alone, undoubtedly is ambiguous, inasmuch as in its broadest and most comprehensive sense, it includes everything not animal or vegetable, while in the ordinary acceptation or use of the word it has a much more restricted meaning; for this reason parol evidence was admissible to show in what sense the parties to the grant used it. (*Coit* v. *C. Ins. Co.*, 7 Johns. 385 ; *Astor* v. *Ins. Co.*, 7 Cow. 202 ; *Cochran* v. *Retburgh*, 3 Esp. [N. P.] 121 ; *Myers* v. *Walker*, 24 Ill. 133 ; *Fitch* v. *Carpenter*, 43 Barb. 40 ; *Miller* v. *Stevens*, 100 Mass. 318 ; *Smith* v. *Clews*, 114 N. Y. 190 ; *Atkinson* v. *Truesdell*, 127 N. Y. 230 ; *Hartwell* v. *Camman*, 10 N. J. Eq. 120 ; *Walls* v. *Bailey*, 49 N. Y. 470 ; *Silberman* v. *Clark*, 96 N. Y. 524 ; *Coleman* v. *M.*

*B. I. Co.*, 94 N. Y. 229 ; *French* v. *Carhart*, 1 N. Y. 96 ; *Bridger* v. *Pierson*, 45 N. Y. 601 ; *Green* v. *Eldred*, 66 N. Y. 611 ; *Masten* v. *Olcott*, 101 N. Y. 152 ; *Livingston* v. *Ten Broeck*, 16 Johns. 22 ; *Wyckoff* v. *Stevenson*, 14 Ohio, 134 ; *Collender* v. *Dinsmore*, 55 N. Y. 200 ; *Miles* v. *Burrows*, 127 Mass. 159 ; *Chester* v. *Luca*, 112 Mass. 524.) The word "minerals" does not include common granite, even taken alone, unless it be first found as a fact that it was the intention of the parties that it should be included, and pass by that term. (*Dunham* v. *Kirpatrick*, 101 Penn. St. 43; *Countess of Listowel* v. *Gibbings*, 9 Ir. C. L. 223 ; *Provost of Glasgow* v. *Farie*, L. R. [13 App. Cas.] 657 ; *Brown* v. *Chadwick*, 7 Ir. C. L. 101 ; *Tucker* v. *Linger*, L. R. [21 Ch. Div.] 18 ; *Darvill* v. *Roper*, 3 Drury, 294 ; *Gibson* v. *Tyson*, 5 Watts, 34 ; Wood on Nuisances, § 168 ; *Stevens* v. *Gill*, 1 Min. Rep. 576 ; *Stevens* v. *Williams*, 1 Min. Rep. 557, 566, 573 ; *I. S. M. Co.* v. *Cheeseman*, 2 McCrary, 191.) Both the Federal and state statutes on the subject of minerals show that the popular understanding of the word minerals does not include granite. (*W. P. R. R. Co.* v. *United States*, 108 U. S. 510 ; *I. S. M. Co.* v. *Cheeseman*, 116 U. S. 529 ; Laws of 1890, chap. 411 ; Laws of 1881, chap. 293.) The judgment in the case at bar must be affirmed, for the reason that plaintiff's deed is void, because, at the time he acquired his title, defendant was in the actual possession of the granite on lot 27, claiming it under a title adverse to the grantor. (1 R. S. 825, § 12 ; *Webster* v. *Van Steenberg*, 46 Barb. 211 ; *Towle* v. *Remsen*, 70 N. Y. 303 ; *Christie* v. *Gage*, 71 N. Y. 189 ; *Becker* v. *Church*, 75 N. Y. 562 ; *Eldridge* v. *Binghamton*, 120 N. Y. 309 ; *Terrell* v. *Wheeler*, 13 Civ. Pro. Rep. 178 ; *Colvin* v. *Baker*, 2 Barb. 206 ; *Raynor* v. *Timerson*, 46 Barb. 519 ; *Campbell* v. *Holt*, 115 U. S. 620.)

ANDREWS, Ch. J.   This action was brought to restrain the defendants from quarrying granite upon lot 27, Split Rock tract, in Essex county.   Both parties claim title to the granite.   The plaintiff claims under two deeds from Philip S.

Baldwin, the common source of title to John Bridgford and others, one dated March 30, 1871, and the other May 18, 1871. By the first deed, which recites a consideration of eight hundred dollars, Baldwin conveyed to the grantees "All the mineral ores" on the tract, "together with all needed ways and privileges for mining and raising and removing said mineral ores, excepting and reserving such mineral ores as were originally reserved by the State of New York, and reserving all other rights and interests in said lands save said mineral ores and the right to raise and remove the same." By the second deed, which makes no reference to the first deed, but which recites the same money consideration, the grantor conveyed "All the mineral and ores (on the same premises), with the right to mine and remove the same; also the right to sink shafts and sufficient surface to erect suitable buildings for machinery and other buildings necessary and usual in mining and raising ores; also the right of ingress and egress for mining purposes, and to make explorations for minerals and ores, saving reservations to the State of New York." In June, 1890, the plaintiff by conveyance to him acquired the right vested in the original grantees of Baldwin under the deeds mentioned. In March, 1889, the defendant, as grantee of a prior corporation in which through mesne conveyances the title to the lands remaining in Baldwin after the conveyance to Bridgford and others in 1871 was vested, acquired such title. Before the conveyance to the defendant, and about the year 1880, a vein of granite 300 to 400 feet in width had been discovered on the premises. The land was thickly wooded and the granite discovered was overlaid by soil from four to six feet deep. Prior to the defendant's purchase the vein had been uncovered to some extent and some work had been done by the defendant's grantors in getting out granite for market. The defendant took immediate possession of the premises under its deed and commenced active operations in developing the granite, and up to June, 1890, when the plaintiff acquired his alleged title, the defendant had expended in opening the

quarry, erecting buildings and machinery, and in necessary work for conducting the business the sum of about thirty-five thousand dollars.

The determination of the controversy in this case depends upon the interpretation of the second deed from Baldwin to Bridgford and others of May 18, 1871. Under the deed of March 30, 1871, which conveyed only the " mineral ores " on the lot, it is plain that the granite did not pass. The word " ore " has a definite signification, and designates a compound of metal and other substance. Granite neither in a popular or scientific sense is a mineral ore. The second deed conveys the " minerals *and* ores," and also amplifies by words, if not in law, the mining privileges and the right to use the surface given by the first deed. There is no explanation of the circumstances which led to the giving of the second deed. There is nothing to show that it did not express the real intention of the parties. We think the necessary inference from the comparison of the two deeds is that the second was intended to convey rights not included in the prior grant, and that the words " minerals and ores " cannot be cut down to the same meaning as " mineral ores " in the first deed, upon any theory that no new consideration was given for the second deed, or that the whole purpose of the second deed was to define more clearly than was done by the first deed the incidental mining privileges intended to be granted, and not to enlarge the grant as to the kind of minerals granted. If the first deed has any importance in the case, it strengthens rather than weakens the position of the plaintiff.

The whole question, as above intimated, turns on the interpretation of the words " minerals and ores " in the second deed. In view of the conclusion we have reached and to avoid possible misconceptions in the future, it is proper to state that in our opinion the evidence given and admitted on behalf of the defendant under objection by the plaintiff, that the purpose of Bridgford and his co-grantees in securing the deeds of 1871 was to acquire the iron ore then supposed to exist on the premises, and of their statements contempora-

neously with the purchase, that they had purchased the iron ore on the lot, was incompetent to explain or confine the meaning of the words " minerals and ores" in the deed of May 18, 1871. The evidence would have been incompetent if it had related to the motives of the parties to the deed sought to be established by the oral statements or negotiations between them prior to or contemporaneous with its execution. The words of a deed, unambiguous in themselves, cannot be controlled by proof that the parties used them with a definite and limited meaning, for the purpose of that particular instrument. Such proof might, under some circumstances, be competent in an action between the parties to reform the instrument, but not in determining the rights of the parties under the instrument as written. The incompetency of the evidence received as to the motives of the original grantees and of their statements as to what they intended to purchase or had purchased, is still more manifest in view of the fact that they were disclosed and the statements made to third parties not connected with the sale. (See *Voorhees* v. *Burchard*, 55 N. Y. 98.) The defendants were also permitted under objection to give evidence of witnesses who lived or had owned property in the Champlain valley, that the word "minerals" was understood " about there" to mean iron ores. It is unnecessary to determine in this case whether the usage or understanding in a particular district of the meaning of words used in a deed of mining property, which limits and controls their general meaning, is admissible for the purpose of fixing rights thereunder. It is sufficient to say that the evidence offered and received upon that subject in this case only went to the extent of showing that certain persons understood that the term " minerals," when used, did not include granite, but ores containing metals. The evidence was quite insufficient to establish a settled and recognized usage which shall override the legal meaning of the word. It was not shown that any transaction had taken place based upon the alleged usage, or that such usage was known to either of the parties to the deeds of 1871. In a mining case (*Tucker* v.

*Linger*, 21 Ch. Div. 18), JESSEL, M. R., speaking of a custom relied upon in that case, said : " The custom must be collected, not from what witnesses say they think the custom is, but from what was publicly done throughout the district." (See *Midland Railway Co.* v. *Robinson*, 37 Ch. Div. 386, and remarks of V. C. in *Darvill* v. *Roper*, 3 Drewry, 301.)

Putting aside, therefore, the extraneous evidence received upon the construction of the words " minerals and ores " in the deed of 1871, the questions arise (1) whether, under a grant of " minerals," on specified premises, granite is included in the absence of limiting words ; and (2) whether, if comprehended in the general term, it is excluded from the deed of May 18, 1871, by reason of the context in connection with the fact that it can only be got by quarrying. It is plain that an owner of land who grants the minerals to another does not use the word as synonymous with mineral substances, because if this meaning was attached to the grant it would amount to a grant of the whole land, as the soil and all below it would be embraced in that description. The question of what are minerals within a grant or reservation of mines and minerals has been frequently considered by the English courts, and the almost uniform conclusion has been that the word includes not only metals and metal-bearing rock, but anything mineral in character which can be got by mining. In one of the cases (*Earl of Rosse* v. *Wainman*, 14 M. & W. 859), which was affirmed (2 Exch. 800), the question arose under a reservation to the lord of the manor, in an inclosure act, of "all mines and minerals" lying within or under the common or waste lands, inclosed by the act, and it was held that beds of building stone were within the reservation. PARKE, B., in his opinion, said : " The term ' minerals ' here used, though more frequently applied to substances containing metals, in its proper sense includes all fossil bodies or matters dug out of mines." In *Bell* v. *Wilson* (1 Ch. App. 303), under a conveyance of land reserving to the grantor "all mines or seams of coal and other mines, metals or minerals," it was held that the reservation included freestone. *Hext* v. *Gill* (L. R., 7 Ch. App. 699) is

an important case on the subject, because Mellish, L. J., in his opinion formulates as the result of the adjudged cases the principle upon which the cases proceed, and which has been followed and applied in several subsequent cases. That was a case of a reservation in a private grant by the lord of a manor of " all mines and minerals within or under the premises," and the question was whether beds of china clay, the product of the disintegration of granite, not known to exist in the land at the time of the grant, were embraced within the reservation, and the court decided that they were. Mellish, L. J., said : " The result of the authorities, without going through them, appears to be this, that a reservation of ' minerals' includes every substance that can be got from underneath the surface of the earth, for the purpose of profit, unless there is something in the context or in the nature of the transaction to induce the court to give it a more limited meaning." The same principle was expressed in another form by Bowen, L. J., in the case of *Earl of Jersey* v. *Guardians*, etc. (L. R., 22 Q. B. Div. 555), following the case of *Hext* v. *Gill* (*supra*), in which he said that the word applies to all substances of a mineral nature which have " a use or value of their own, independent of their being constituents of the soil." The question in that case was whether, under a reservation in an ordinary grant of " all mines of coal, culm, iron and all other mines and minerals whatever, except stone quarries within and under," etc., brick earth and clay were reserved, and it was held that they were. Lord Romilly in *Midland Railway Co.* v. *Checkley* (L. R., 4 Eq. Cas. 19), construing a reservation in an act for the compulsory taking of land for canals, of " all mines and minerals within and under the land," in which the question was whether the right to quarry paving stones was reserved, said : " Stone is, in my opinion, clearly a mineral, and, in fact, everything, except the mere surface which is used for agricultural purposes ; anything beyond that which is useful for any purpose whatever, whether it is granite, marble, fire clay or the like, comes within the word mineral, when there is a reservation of the mines and

minerals from a grant of land.    Every species of stone, whether marble, limestone or ironstone, comes in my opinion in the same category."    We shall refer only to another English case, the latest on the subject (*Attorney-General* v. *Welsh Granite Co.*, 35 Week. Rep. 617), decided in 1887, which held that granite was a mineral within a reservation of "mines and minerals."    There are but a few American cases which we have found bearing on the subject.    In *Moore* v. *Brown* (16 N. Y. Supp. 592; *S. C.*, 139 N. Y. 127) it was assumed both in the Supreme Court and in this court that garnet discovered in Essex county on state lands was a "valuable mine or mineral" and subject to a claim under chap. 411 of the Laws of 1890.    In *Hartwell* v. *Camman* (10 N. J. Eq. 128) it was held that "paint stone" useful for grinding into paint procured by mining passed to the grantee of "mines and minerals," although its existence was not known at the time of the grant, but copper mining had before the grant been to some extent prosecuted on the premises.

Upon the authorities we think we should not be justified in holding that granite was not embraced in a reservation or grant of "minerals" in the absence of qualification.    It is no doubt true that this word in its more common application in a grant of "minerals" would be deemed to refer to metallic substances.    This perhaps grows out of the fact that mining is to a great extent prosecuted for the purpose of obtaining gold, silver, iron and other metals, and grants of "minerals" or reservations thereof in conveyances of public lands are most frequently made with reference to mineral-bearing ores or deposits.    But it would be an unwarrantable limitation of such a grant or reservation, to exclude from its operation beds of coal or other non-metallic mineral deposits of commercial value, or to confine it to such minerals as were known or supposed to be on the premises at the time.    The grant or reservation of minerals in a deed contemplates substances to be severed and taken away from the premises, and it is difficult to suppose that the parties to such a deed intended to exclude from the grant any description of valuable mineral which

64

would come within the legal meaning of the word, which might thereafter be discovered. We are of opinion, therefore, that the words " minerals and ores " in the grant of 1871, standing alone, would include the granite upon the premises.

But these words do not stand alone, but are connected with a context which clearly indicates, in our judgment, that the parties had in view only such minerals as are to be got by mining in the ordinary sense of that term; that is, by underground and not by open workings. The grantor, Baldwin, owned the fee of the land. He did not part with his general title to the surface, but he granted special rights therein for the purpose of effecting the grant of the " minerals and ores." He accompanied these words with a specification of the rights granted, that is to say, rights essential to and connected with usual mining operations, and in respect to the surface he granted " sufficient land to erect suitable buildings for machinery and other buildings necessary and usual in mining and raising ores." The evidence is, and the fact would be sufficiently manifest in the absence of affirmative proof, that granite can only be obtained by open quarrying to the destruction of the surface so far as the granite may be uncovered. We think the reasonable construction of the grant limits the rights of the grantee to minerals obtained by underground working, and as granite is not so obtained it did not pass under the conveyance of 1871. The principle of construction is stated by TURNER, L. J., in a case already referred to, speaking of the question whether freestone was a mineral and included in the reservation in that case. He said it must be deemed included unless " either that the freestone is not a mineral, or that being a mineral, the nature or context of the deed shows that it was not intended to be included." The context of the deed here furnishes, we think, the evidence that granite was not intended to be included. It may be that if we followed some English cases the conclusion would be that the granite did pass, but that it could not be taken by open quarrying. (*Bell* v. *Wilson, supra ; Hext* v. *Gill, supra.*) Instead of recognizing this barren right we prefer

to place our judgment on the ground that under this grant no title to the granite passed at all.

We have been referred to several English cases where the right of open quarrying has been held to accompany a grant or reservation of mines and minerals. The cases generally have arisen on the construction of reservations contained in acts of Parliament of rights to landowners whose land has been compulsorily taken for public purposes or by public authority. In every case which has come to our attention involving the right of open quarrying, it has been sustained upon some special language in the act which indicated that the right of open quarrying was intended to be reserved. (See *Midland R'way Co.* v. *Checkley, supra; Midland R'way Co.* v. *Robinson,* 15 App. Cas. 19 ; Id. 37 Ch. Div. 386 ; *Atty.-Genl.* v. *Welsh Granite Co., supra; Earl of Rosse* v. *Wainman, supra.*) In *Midland Railway Co.* v. *Robinson* (15 App. Cas. 27) Lord HERSCHELL said : " In such agreements, in the absence of a distinct indication of the contrary intention, it is always to be assumed that the reserved mines are only to be worked in such manner as is consistent with the surface remaining undisturbed. And if this be true of minerals lying deep below the surface, it would be obviously out of question to permit it to be disturbed by winning minerals which can only be wrought by surface operations."

For the reasons herein stated the judgment below should be affirmed.

All concur.

Judgment affirmed.