ANNA BRADY, Appellant, v. LOUISE J. SMITH, Respondent, Impleaded with Others.

*Deed — exception therein of "all mines and minerals" — the ownership of limestone and granite ledges remains in the grantor — manner of the removal thereof — the grantor's right of access is not lost by non-user.*

Where a deed of premises, which, while they embrace some agricultural land, are largely covered by limestone and granite ledges rising above the natural surface of the ground, contains an exception and reservation of "all mines and minerals which may be found on the above piece of land with the right of entering at any time with workmen and others to dig and carry the same away," the ownership of the limestone and granite, and the right to enter the premises and to dig for and carry away such limestone and granite, remains in the grantor.

Mere non-user by the grantor of his right of access to the premises is not alone sufficient to terminate such right of access.

*Quære*, whether, under such an exception and reservation, the grantor was entitled to remove the limestone and granite by means of open quarrying or in such a way as to disturb the surface of the land.

APPEAL by the plaintiff, Anna Brady, from so much of a judgment of the Supreme Court in favor of the defendant, Louise J. Smith, entered in the office of the clerk of the county of Lewis on the 7th day of May, 1903, upon the decision of the court, rendered after a trial at the Lewis County Special Term, a jury trial having been waived, as among other things determines and adjudges that the title of the plaintiff in the lands described in the complaint is less the mines and minerals reserved as set forth in said judgment.

*C. S. Mereness*, for the appellant.

*A. E. Kilby*, for the respondent.

All concurred, except SPRING and STOVER, JJ., dissenting.

Judgment affirmed, with costs, upon opinion of ANDREWS, J., delivered at Special Term.

The following is the opinion of ANDREWS, J., delivered at Special Term:

W. S. ANDREWS, J.:

On February 18, 1852, John La Farge, being then the owner and in possession of 100 acres of land in the town of Diana, Lewis

county, N. Y., conveyed the same by a warranty deed to one Margaret Lewis. In this deed, however, there was excepted and reserved "all mines and minerals which may be found on the above piece of land with the right of entering at any time with workmen and others to dig and carry the same away."

On March 28, 1859, Margaret Lewis by a warranty deed, conveyed the said premises to James Garrett. In this deed there were contained no reservations or exceptions.

On October 23, 1865, James Garrett conveyed the premises also by warranty deed to John Ackerman, Sr., and Stephen Ackerman reserving and excepting, however, "all mines and minerals that may be found on the above premises, with the right of entering at any time to search for and dig and carry away said minerals."

On November 14, 1870, John Ackerman conveyed his undivided interest in the premises to Stephen Ackerman, reserving "all mines and minerals, with the right to work and carry away the same."

On June 2, 1873, Stephen Ackerman conveyed the premises by warranty deed to Edward C. Ackerman, which deed contained no reservation or exception.

On April 1, 1874, Edward C. Ackerman conveyed a portion of the premises, containing fifty-nine acres, to Charles N. Blood, reserving "all mines and minerals, with the right to dig, work and carry away the same."

On May 28, 1880, Charles N. Blood conveyed twenty of his fifty-nine acres to Thomas Brady, excepting and reserving "all mines and minerals, more especially the limestone bed found within the bounds of the above described lot, with full and absolute right of way across said premises to and from mines, minerals and bed of limestone with men and teams to mine minerals and limestone, and also the right to occupy all the necessary surface ground for the burning and manufacture of said lime and storing the same."

On May 31, 1880, the same Charles N. Blood again conveyed the same premises to Thomas Brady. This deed, however, contained the following reservation, "excepting and reserving unto the party of the first part all mines and minerals in the same manner the same are excepted in former conveyances of the above described premises."

On June 1, 1884, Thomas Brady and wife mortgaged the last-

described premises to P. Vidvard, the mortgage containing the same exception as in the first Blood deed above mentioned.

After the death of Mr. Vidvard his wife, as executrix, assigned this mortgage to Charles P. Leonard. The latter began a foreclosure on June 30, 1887, and the premises mortgaged were, on October first in the same year, sold to Mary Brady, the widow of Thomas.

Thomas Brady died in the year 1886 intestate. His wife, Mary Brady, survived him, and he left three children, Anna, the plaintiff, and Gertrude and Blanche, the last two being still under age.

On November 25, 1892, Mary Brady executed a lease of said premises for a term of fifty years to James W. Carpenter and James A. Phelps, " excepting and reserving mines and minerals as specified in the original conveyance," but granting to them the right " to dig, mine, quarry, use, remove, appropriate and convert to the sole use and benefit of the parties of the second part, their heirs and assigns, all and any marble, stone or other valuable mineral or substance to be found on, in or under said lands, with the right to enter upon, erect, maintain, operate, use, remodel or remove any buildings, machinery or other structures that the said party * of the second part may desire." The right to cultivate the land not occupied was reserved to the lessor. She was to receive as compensation twenty cents for every cubic yard of stone removed.

On December 26, 1893, the above lease was assigned to the Oswegatchie Quarry Company, and on June 25, 1895, the latter company made a sub-lease for a period of twenty years to the Metropolitan Marble Company. The latter company has become insolvent and is represented in this action by its receiver, Phelps.

On January 4, 1894, Mary Brady and the plaintiff, Anna Brady who was then an infant over the age of fourteen years, joined in a petition for the sale of a limestone or marble quarry situated on the premises conveyed by Blood to Brady, and stated to be the property of the infant heirs of Thomas Brady. A referee was appointed subsequently to take proofs and report and he made his report on February 14, 1894. Upon this report an order was made for the guardian to make a proper contract, and in accordance with this

---

* *Sic.*

order a written contract was made on February 14, 1894, by Mary Brady individually and as special guardian of her children, with the defendant Rebecca Phelps for the sale of the whole twenty acres for the sum of $2,400 — $200 being payable on the execution of the contract; $1,200 on May 1, 1894, and the balance secured by a mortgage. So far as the infants' interest was concerned, however, the contract was made subject to the approval of the court.

The purchaser seems to have made the first payment of $200, and on May 1, 1894, the special guardian reported to the court that she had made a contract of sale to Rebecca Phelps. She stated that of the total sum of $2,400 the share of the infants was to be $750. No order confirming this contract has ever been made. On the same day the parties to the contract, by a written agreement, extended the time for its performance to July 30, 1894, and this is the last transaction between them.

On October 1, 1898, Mary Brady conveyed an undivided half of the said premises, excepting and reserving the limestone bed to the plaintiff.

The will of John La Farge was admitted to probate in the year 1858. By it he gave and devised to his wife, who has since died, during the term of her natural life, one-third part of his real estate, and bequeathed all the rest and residue of his property to his children.

By a deed recorded August 6, 1898, certain of the descendants of La Farge, who obtained title under this will, conveyed to the defendant Smith their right, title and interest in an undivided four-thirty-fifths share of the mineral rights upon the twenty acres before referred to, and he, in turn, later made an agreement with the defendant Sullivan permitting the latter to enter upon the premises and dig for and carry away the minerals found thereon.

The twenty acres in question are largely covered with limestone or granite ledges rising above the natural surface of the ground. There is, it is true, some timber and some tillable land. But probably the chief value of the property consists in this stone. To obtain this material a quarry has been opened.

The plaintiff claims that she and her sisters, subject to their mother's right of dower, are the owners of this limestone or granite bed, and that she and her mother each own an undivided half of

the remainder of the premises, and that she is entitled to a decree of partition in this action. She also states that the other defendants claim some interest in the property, and she now asks to have the rights of all the parties fixed and determined. With this end in view, and upon the consent of all the parties, an order was made bringing in certain defendants not originally sued.

The defendants Sullivan and Smith, in their answer, claim that the rights to the granite or limestone quarry were reserved in the deed from La Farge to Lewis; that Smith is a tenant in common with the heirs of La Farge not parties to this action, and that, as such tenant in common, she had a right to give to Sullivan the authority to remove the material.

Rebecca Phelps claims that under the infancy proceedings and the contract she is the equitable owner, and is entitled to receive a conveyance of the entire property, subject to the Phelps and Carpenter lease, upon paying the balance of the purchase price.

The defendants Carpenter and Phelps, the Oswegatchie Quarry Company and the Metropolitan Marble Company claim that under the lease made by Mary Brady they are rightfully entitled to possession of the land and the quarry for a period of fifty years from the date of the lease.

As a matter of fact the defendant Sullivan seems to be in actual possession of the quarry.

Upon this state of facts I have reached the following conclusions :

(1) Under the La Farge deed the ownership of the limestone and granite upon the twenty acres in question, and the right to enter, dig for and carry away the same remained in the grantor, and passed to his children under his will. (*Armstrong* v. *Granite Co.*, 147 N. Y. 495; *Hext* v. *Gill*, 7 Ch. App. Cas. 699.)

The material clearly is a mineral and it is reserved from the grant unless " the nature or context of the deed shows that it was not intended to be included " in the reservation.

There is nothing to justify such a finding. The only claim that can be made is that the ledges of rock were so apparent and covered so large a portion of the original 100 acres that the parties could not have referred to them — that to except them would practically destroy the grant.

Yet it may equally well be said that the knowledge that this

mineral existed was the very reason that the reservation was inserted in the deed. Nor was the land worthless except for the stone upon it. Much of the 100 acres seems to have been ordinary farming land, and even the twenty acres, as is shown by the sale under the Vidvard mortgage, and the contract with Mrs. Phelps, was valuable for agricultural purposes.

(2) The title of the heirs and grantees of La Farge to the granite and limestone, as well as the right of access thereto reserved has not, so far as appears in this case, been lost by adverse possession or by abandonment.

There has been nothing like an open, notorious, continuous possession of the mines and minerals hostile to the rights of the true owners. The possession of the land by Margaret Lewis and her grantees was entirely consistent with the reservation. And the fact that lime was occasionally burnt upon the premises is insufficient to sustain such defense.

As to the right of access the most that can be said to have been shown is mere non-user and this is not enough. (_Conabeer_ v. _N. Y. C. & H. R. R. R. Co._, 156 N. Y. 474.)

(3) While Smith as the grantee of the La Farge devisees is the owner of an undivided share of the limestone or granite bed, she and her licensee, Sullivan, may still be exercising their rights improperly. It is, at least, doubtful whether they may remove the material by means of open quarrying or in such a way as to disturb the surface. (_Armstrong_ v. _Granite Co._, 147 N. Y. 495; _Hext_ v. _Gill_, 7 Ch. App. Cas. 699; _Midland Railway Co._ v. _Robinson_, L. R. 15 App. Cas. 19, 27; _Attorney-General_ v. _Welsh Granite Co._, 35 Week. Reptr. 617.)

In both _Hext_ v. _Gill_ and _Attorney-General_ v. _Welsh Granite Co._ the word "dig" had been used.

This question, however, is not properly before the court in this action and may be ignored here. Whatever the precise rights of Smith and Sullivan, the plaintiff has no title to the stone and as to them the action must be dismissed.

(4) By the foreclosure of the Vidvard mortgage in 1887 Mary Brady became the owner of the twenty acres, less the mines and minerals reserved. This, as we have seen, she leased to Phelps and Carpenter in 1892, reserving the use of the buildings on the premises,

and the right to cultivate the land not used or required by them in their operation.  It is true that on the face of the instrument it is apparent that the parties made the contract chiefly with reference to the quarry rights which were not in fact transferred. But neither Mrs. Brady nor her successor in title is in a position to claim that, therefore, the lease was void or could be avoided by them.

(5) By the contract of 1894 Mrs. Brady agreed to sell her interest in the land, subject to the Phelps and Carpenter lease, to Mrs. Phelps.  This agreement was distinct from the agreement as to the supposed interest of the infants and is perfectly valid.

Still, in view of all the circumstances, I am disposed to hold as a matter of fact that the parties have rescinded this contract.  (*Ballard* v. *Walker*, 3 Johns. Cas. 60.)

(6) Consequently the plaintiff and Mary Brady are each the owner of one undivided half of this twenty acres, less the mines and minerals thereon, subject to the rights of Phelps and Carpenter, their assignees and sub-lessees under the lease of November 25, 1892.

(7) Apparently it is conceded that no actual partition of this property can be made.  Therefore, the plaintiff is entitled to the usual interlocutory judgment for its sale, subject to the interests of the lessees just referred to.

(8) The plaintiff may be paid her taxable costs out of the proceeds of such sale, but under the circumstances no costs should be awarded to any of the other parties herein.

Findings in pursuance to this opinion may be prepared, and if not agreed upon will be settled by me upon proper notice.