# McCombs *v.* Stephenson, *et al.*

## *Ejectment.*

(Decided Nov. 14, 1907.   44 So. Rep. 867.)

1.  *Mines and Minerals; Conveyances; Construction of Terms.*—The word minerals as used in conveyances of mineral interests in land is not limited to metallic substances but includes salt, coal, clay, stone, etc., and means all substances in the earth's crust sought for and removed for the substance itself.

2.  *Deeds; Construction; Contradictory Clauses.*—Where the subsequent clause of a deed is of doubtful import, it will not be construed as contradicting the preceding certain clause, as the rule is that the first clause governs in a deed containing contradictory clauses unless the intention to qualify it clearly appears.

3.  *Same.*—Ambiguities and inconsistencies in other clauses will not defeat the intention of the parties where the deed contains a clause showing this intention.

4.  *Same.*—Where a deed admits of two constructions, it will be construed most strongly against the grantor.

5.  *Mines and Minerals; Conveyances; Construction.*—Where a deed conveys the coal, ores, and other minerals and metals in etc., the lands described and all the timber, water and stone upon the same, necessary for the mining of the coal and other minerals, it conveys the shale in the land.

6.  *Evidence; Expert Testimony; Subject Matter; Construction of Deed.*—It is permissible for an expert to testify as to the meaning of words where the issue is the meaning of a word in a deed conveying minerals in the land described, and hence, such an expert may tetstify as to whether shale is a mineral within the meaning of the words as used in the conveyance.

APPEAL from Birmingham City Court.
Heard before Hon. C. W. FERGUSON.

[McCombs v. Stephenson, et al.]

Action of ejectment by John T. McCombs against L. L. Stephenson, et al., to recover certain shale or stone. From a judgment for defendant, plaintiffs appeal. Affirmed.

The deed construed conveyed to the Henry Ellen Coal Company, for a valuable consideration all the coal ores and other minerals and metals in, under and upon certain lands described therein. The latter clause referred to as qualifying the former is as follows. "And all timber, water, and stone upon the same necessary for the development, working and mining of said coal and other minerals and the preparation of same for market, and the removal of same. At the conclusion of the testimony the judge without the intervention of the jury rendered judgment for the defendant.

PEYTON H. MOORE, for appellant. The phrase, "all timber, water and stone, etc.," has received its construction fom this court.—*Sloss-S. & I. Co. v. Kennedy S. & C. Co.*, 137 Ala. 401. The use and the meaning of the word, "mineral" has been construed in the following cases.—*Brady v. Smith*, 181 N. Y. App. 178; *Armstrong v. Lake Champlain Granite Co.*, 49 Am. St. Rep. 683; *Dunham v. Kilpatrick*, 47 Am. Rep. 696; *Hartwell v. Camman*, 64 Am. Dec. 448. The courts unquestionably know what is within the common experience of all men, and it is not necessary to prove the meaning of terms which from continuous use have acquired a definite signification.—*Watson v. The State*, 55 Ala. 158. Where a deed contains two repugnant descriptions, one general and the other special, the special must prevail.—*Sykes v. Shores*, 74 Ala. 382; *Coster v. Chevalier*, 108 Ala. 563. Another cardinal rule is to effectuate, if possible, the intention of the grantor.—*Saunders v. Saunders*, 20 Ala.

710; *Hamner v. Smith*, 22 Ala. 433; *Strong v. Gregory*, 19 Ala. 146; *Mitchell v. Gates*, 23 Ala. 438; *Pollard v. Maddox*, 28 Ala. 321. Where a technical word is used, evidently in a sense different from its technical signification, the court will give to it the construction which the grantor intended.—*Cent. Pac. R. R. Co. v. Beall*, 47 Cal. 151.

PERCY & BENNERS, for appellee. The first theory asserted by appellant is that the shale in the land did not pass by the grant of all the minerals in the land. That this is not true, we call attention to the following text book and cases.—20 A. & E. Ency. of Law, p. 638; White on Mines, sec. 4; Lindley on Mines, secs. 89-93; *Hartwell v. Camman*, 10 N. J. E. 128; *Johnson v. California Co.*, 59 Pac. 595; *Rex v. Brettell*, 3 B. & A. 424; *Murray v. Allred*, 66 Am. St. Rep. 740; *Armstrong v. Lake Champlain Co.*, 49 Am. St. Rep. 683; *Midland Ry. v. Chechley*, 4 L. R. Eq. 19;; *Hendley v. Lehigh Valley R. R. Co.*, 103 Am. St. Rep. 1005; *Hext v. Gild*, 7 L. R. C. A. C. 1871; *Johnston v. Compton*, 63 Lord J. C. 559. A deed substantially like the one in question was construed in the case of *Williams v. Gibson*, 84 Ala. 228, and breaks down the second contention of the appellant that the grant was limited to only such stone as was necessary in mining the minerals in the land.

SIMPSON, J.—This action was statutory ejectment, brought by the appellant against the appellee to recover a certain quantity of "shale," described by the government subdivisions of land which it occupied. The plaintiff had previously conveyed to the defendant's vendor "all the coal, ores, and other minerals and metals in, under, and upon" the land in question, and "all timber, water, and stone upon the same necessary for the devel-

[McCombs v. Stephenson, et al.]

opment, working, and mining of said coal and other min-
erals, and the preparation of the same for the markets
and the removal of same." It is admitted that "shale"
is a kind of stone which is in layers, and that the defend-
ant is getting this out, using dyamite and other means,
from the top, and grinding the shale up and manufactur-
ing the same into brick.

The plaintiff claims that said "shale" was not convey-
ed by his said deed, while the defendant holds the con-
trary; and, for the purpose of raising this question, the
plaintiff objected to the introduction of said deed. It
is unnecessary to repeat the definitions in the diction-
aries to show that according to all recognized authority,
scientifically speaking, stone or rock is a mineral, yet
the decisions are not altogether harmonious as to the
meaning of the word in deeds of this character.

In a case before the New Jersey Court of Chancery,
where the controversy was as to whether a deed convey-
ing "mines and minerals" conveyed a certain stone
paint, which is said to be "a substance resembling, in
general appearance, red shale, so soft as to be easily cut
with a knife when first excavated, but differing, in ap
pearance and quality, from the surrounding earth," etc.,
the court said: "By the use of the terms 'mines and
minerals' it is clear the grantor did not intend to in-
clude everything embraced in the mineral kingdom, as
distinguished from what belongs to the animal and vege-
table kingdoms. If he did, he parted with the soil itself.
Such a construction would be inconsistent with and re-
pugnant to the whole tenor of the grant. Nor can I see
any propriety in confining the meaning of the terms
used to any one of the subordinate divisions into which
the mineral kingdom has been subdivided by chemists,
either earthy, metallic, saline, or bituminous minerals."
After referring to various definitions and the testimony

of an expert, the court concludes that the stone paint, being "a body destitute of organization," etc., "distinct from ordinary earth," etc., and "valuable for its mineral properties," was included in the term "mines and minerals."—*Hartwell v. Camman*, 10 N. J. Eq. 128, 64 Am. Dec. 448, 451, 452, et seq.

In the case of *Dunham v. Kirkpatrick*, 101 Pa. 36, 47 Am. Rep. 696, the Supreme Court of Pennsylvania held that a reservation of "all minerals" in a deed did not include petroleum oil. The argument of that court seems to be, first, that, to give a strict scientific construction to the reservation, it would be co-extensive with the grant, and nothing would be conveyed (which argument has no bearing on this case), and, second, that the bulk of mankind consider nothing as mineral except "things of a metallic nature." The cases cited in the note to this case indicate that the weight of authority is against it.—47 Am. Rep. 698.

The New York Court of Appeals, after citing a number of English and other authorities, which are instructive, states that "the grant or reservation of minerals in a deed contemplates substances to be severed and taken away from the premises, and it is difficult to suppose that the parties to such a deed intended to exclude from the grant any description of valuable mineral which would come within the legal meaning of the word." In that case the court held that under the first deed, conveying "mineral ores," granite rock was not included, because it is not an ore; but under the second deed, conveying "all the minerals and ores," granite would have been included but for the qualifying words, "with the right to mine and remove same," "also the right to sink shafts and sufficient surface to erect suitable buildings for machinery and other buildings necessary and usual in mining and raising ores." From these expressions

8 R

the court held that the intention was to convey only those "minerals obtained by underground working, and, as granite is not so obtained, it did not pass."—*Armstrong v. Lake Champlain Granite Co.*, 147 N. Y. 495, 42 N. E. 186, 49 Am. St. Rep. 683, 689 et seq.

The Supreme Court of Tennessee, in a well-considered opinion, holds that natural gas, coal oil, or petroleum are minerals within the terms of a reservation. The court notes that a later Pennsylvania case (*Gill v. Weston*, 110 Pa. 313, 1 Atl. 921) seems to oppose the case of *Dunham v. Kirkpatrick, supra,* and remarks that "we do not think that the bulk of mankind could be regarded as holding that the word 'mineral' applied only to metals."—*Murray v. Allred*, 100 Tenn. 100, 43 S. W. 355, 39 L. R. A. 249, 66 Am. St. Rep. 740, 749, et seq:

In a later case the Supreme Court of Pennsylvania has also held that, aside from its scientific definition, "mineral," in its commercial sense, "may be defined as any inorganic substance, found in nature having sufficient value, separated from its situs as part of the earth, to be mined, quarried, or dug for its own sake or its own specific uses." Hence the court held that, while "a vein of pure white quartz sand, valuable for making glass or other special use," would be mineral within the reservation, yet "common mixed sand, merely worth digging and removing as material for grading, would not be."—*Hendler v. Lehigh Valley R. R.*, 209 Pa. 256, 58 Atl. 456, 103 Am. St. Rep. 1005, 1006, 1007.

A later New York case refers to some of the remarks in the case of *Armstrong v. Lake Champlain Granite Co., supra,* and, after citing a number of English cases, reaches the conclusion that "each case must be decided upon the language of the grant or reservation, the surrounding circumstances, and the intention of the grantor, if it can be ascertained," and not by "the adoption

[McCombs v. Stephenson, et al.]

of arbitrary definitions in reference to mineral substan-
ces." Consequently. it holds that, where the reserva-
tion was of "all *mines* and minerals which may be *found*
on the above piece of land, with the right of entering at
any time, with workmen and others to *dig* and carry
the same away" (italics ours), immense boulders and
ledges of limestone which cropped out on the surface
were not included in the reservation.—*Brady v. Smith,*
181 N. Y. 178, 73 N. E. 963, 965, 106 Am. St. Rep. 531.

In the case of *Deer Lake Co. v. Mich. Land & Iron
Co.,* 89 Mich. 180, 50 N. W. 807, the Supreme Court of
Michigan reaches the singular conclusion that, because
iron was the only valuable mineral known, at the time
of the execution of the deed, to exist in that region,
therefore a reservation of "minerals" included only
"minerals in common use, and known as such, and
would not include quarries or deposits of marble," etc.
Such an interpretation would defeat the prime object
of a large proportion of the reservations and grants of
mineral rights.

In view of the meaning of the word, and of the vari-
ous decisions bearing on its practical use, the American
& English Encyclopedia of Law gives what seems to be
a workable definition as follows: "By the term 'min-
erals' are meant all the substances in the earth's crust
which are sought for, and removed by man, for the sub-
stance in itself. It is not limited to metallic substances,
but includes salt, coal, clay, stone of various sorts, etc.,
and even petroleum and natural gas have been held to
be minerals."—20 Am. & Eng. Ency. Law (2d Ed.), p.
683. There is no evidence of any usage to show that the
word "minerals" was used in any other sense than as it
is defined in the books.

We think, then, that ,unless there are some qualifying
words in the instrument, showing a contrary intent, the

conveyance in this case included the shale in question. In construing a deed, even if the clauses are contradictory, the rule is that the first clause governs, unless the intention to qualify it is made very plain (*Webb v. Webb's Heirs*, 29 Ala. 588, 606; *Gould, Ex'r, et al. v. Womack and Wife*, 2 Ala. 83, 87; *Petty et al. v. Boothe et al.*, 19 Ala. 633, 640, 641), and, "when the subsequent words are of doubtful import they should not be so construed as to contradict the preceding words which are certain" (Ib. 641). "If the deed contains a clause decisively showing the intention of the parties, ambiguities and inconsistencies in other clauses of the deed will not defeat such intention."—2 Devlin on Deeds, u. 106, § 837; *Moran v. Somes*, 154 Mass. 200, 28 N. E. 152, 153; *Bent v. Rogers*, 137 Mass. 192. It is also a familiar principle of law that, if a deed admits of two constructions, it will be construed most strongly against the grantor.— 13 Cyc. 609. Construed in the light of these principles, the first clause clearly conveys the shale in question, and it is not limited or qualified by the subsequent clause.

There was no error in the admission of the testimony of Dr. Smith, an expert, as to the meaning of the word "minerals," and at any rate his testimony does not differ from the definitions as given in the books. He was also competent to testify as to whether the shale in question is a mineral.

The judgment of the court is affirmed.

Tyson, C. J., and Anderson and Denson, JJ., concur.