## Wheeling.

HEZEKIAH HAWKINS *vs.* JOHN M. WILSON.

January Term, 1865.

1. The description, in a summons of unlawful detainer, of premises, as "a certain house and appurtenances;" import *land* within the meaning of chap. 134 of the code of 1860, to the extent of the land on which the house stands and the garden attached to it, but no further.

2. A vendee in an executory contract for the sale of land, cannot maintain an action of unlawful detainer against the vendor for the possession of the premises. The only remedy, at law, of the vendee, being an action for damages on the breach of contract for refusing to deliver the possession.

3. No objection can be taken in the court of appeals, to an instrument of writing in the cause, because the same was not properly stamped by a U. S. revenue stamp, when no objection appears to have been made to its introduction in the court below, and the fact made the subject of a bill of exceptions or other specific notification.

On the 23rd day of January, 1864, *Hezekiah Hawkins* sued out of the office of the clerk of the circuit court of *Monongalia* county, a summons of unlawful detainer, directed to the sheriff of that county, commanding him to summon *John M. Wilson* to appear before the judge of the circuit court of said county, on the second day of the February term next ensuing, to answer the plaintiff of a plea that the defendant, *Wilson*, unlawfully detained from the plaintiff the possession of a certain house and its appurtenances, in *Monongalia* county, State of *West Virginia*, being the same purchased by said plaintiff from the defendant, and then in the occupancy of the defendant.

The summons was returned executed on the 28th day of January following.

The cause being docketed on motion of the plaintiff, the defendant by his attorney moved the court to quash the

summons, which motion was overruled; and thereupon the defendant pleaded not guilty, and a jury was empanneled who after hearing the evidence returned a special verdict, finding the defendant guilty of unlawfully withholding the house and appurtenances described in the summons, at the time of the institution of the suit, and that he had not so detained the possession of the premises for three years before the date of the summons in the cause, subject to the opinion of the court on the demurrer to the evidence filed with the cause; but if the law on the demurrer was for the defendant then they found for him.    During the progress of the cause the plaintiff introduced as evidence, after proving its execution by the subscribing witness, a writing or title bond, which his attorney stated was offered in connection with the other evidence in the cause.    The bond was in the following words and figures: "Know all men by these presents, that we, *John M. Wilson* and *Pleasy* his wife are held and firmly bound unto *Hezekiah Hawkins* in the penal sum of twenty-five hundred dollars, for the payment whereof we bind ourselves, our heirs and so forth: witness our hand and seal this 21st day of April, 1863.

"The condition of the above obligation is such, that whereas the said *Wilson* has this day sold to the said *Hezekiah Hawkins* a certain tract or parcel of land in *Monongalia* county, on the waters of *Indian* creek, estimated to contain fifty acres, at twenty-five dollars per acre; three hundred dollars in hand, two hundred and fifty the 30th day of October, 1863, two hundred and twenty-five dollars, the 10th day of February, 1864, two hundred and fifty the 10th day of February, 1865, and two hundred and twenty-five dollars the 10th day of February, 1866; and said *Hawkins* is to have possession of what he wants to seed, and have possession of the house the first of November, and *Wilson* to have the old house and a lot to feed on till spring; and said *Wilson* is to make one thousand rails and lay them up where *Hawkins* wants them; said *Wilson* shall make or cause to be made to said *Hawkins* a good deed with special warrant for said land, deed to be made when the purchase money is

paid, then this obligation to be null and void, otherwise to remain in full force and virtue in law.

JOHN M. WILSON, [SEAL.]

Attest, April 21, 1863.            E. MORRIS, [SEAL.]"

To the introduction and reading of this bond the defendant by his attorney objected; but the court overruled the objection, and the defendant excepted to the ruling, which was the only bill of exceptions in the cause. The only evidence in the cause was the title bond and that of *Eli Morris* and *James G. Michael.*

*Morris* testified, that he signed the title bond as a witness at the request of *Wilson* and *Hawkins*; that *Wilson* signed it in his presence and that he then lived on the land named in the bond, and in a house on the same, which was the only dwelling house thereon; and that *Wilson* had moved on the land three years before, in the spring of 1861.

Michael's testimony corroborated that of Morris, as to the residence of the defendant on the land, and the length of time he had so resided, and in some other unimportant particulars.

The defendant by his attorney filed a demurrer to the evidence, which being argued the court overruled, and then proceeded to give judgment on the verdict of the jury. The defendant then applied to this court for a supersedeas to the judgment of the circuit court assigning errors substantially as follows: *First,* The court should have quashed the summons, because it did not show on its face such a case as would authorize the proceedings, and because the description of the property was too vague and uncertain. *Secondly,* The court erred in permitting the title bond to go to the jury, because the same was not stamped by a U. S. revenue stamp; and because the title bond was executory in its character, and did not confer either the actual or constructive possession of the premises, so as to entitle the plaintiff to recover the possession in the action of unlawful detainer, under the 1st section of chap. 134 of the code of 1860; nor did the evidence introduced in connection therewith aid to prove actual possession in the plaintiff at any time. *Thirdly,*

The court erred in refusing to sustain the demurrer to the evidence and in giving judgment for the "house and appurtenances," because the evidence was not sufficient in law to authorize the judgment, and because the verdict was bad for uncertainty and vagueness of description of the premises. *Fourthly*, The court erred in giving judgment on the verdict and awarding a writ of possession for the "house and appurtenances," because of vagueness and uncertainty; the officer could not know of what to deliver the possession.

*P. H. Keck* for the plaintiff in error.
*J. S. Wheat* for the defendant in error.

BROWN, J.    This was an action of unlawful detainer, brought by Hezekiah Hawkins, the defendant in error, against John M. Wilson, the plaintiff in error, in the circuit court of *Monongalia* county, in which there was a verdict and judgment for the defendant in error.    To that judgment a supersedeas was allowed by a judge of this court.

At the trial in the court below, the defendant there moved to quash the summons instituting the suit, which motion the court overruled.    The plaintiff below, after proving its execution, offered in evidence a title bond from the defendant, Wilson, to himself, embracing the house and appurtenances in the summons mentioned; to which the defendant objected, and his objection being overruled by the court, and the paper admitted, he excepted.

Two points fairly arise upon the record for the decision of this court.    1st, Does the statement in the summons, that the "defendant unlawfully detains from the plaintiff the possession of a certain house and its appurtenances, in *Monongalia* county, being the same purchased by said plaintiff from said defendant, and the same house now in the occupancy of said defendant," import *land* within the meaning of chapter 134 of the code of 1860.

Upon a review of the authorities cited in the 1st vol. of Sharswood's Blackstone's commentaries, book 2, page 16, in note, and 3 Sanders 401, note 2, I think that we are fully

warranted in holding that, the words, "a certain house and appurtenances," do import *land* within the meaning of the statute, to the extent of the land on which the house stands and the garden attached to it, but no further.

I think there is nothing in the objection, that the description of the property in the summons is too uncertain, it being described with convenient certainty.

The other, and most important question, is that raised to the title bond, or right of a vendee not having any legal title, to recover the possession from his vendor. The attorney for the defendant in error, has not been able to furnish us with any authority in support of the proposition; nor have I been able to find any, in the examination I have been able to make in the progress of the cause.

In *Middleton* vs. *Harrison*, 11 Grat., it was held that "a landlord who sells land, in the possession of his tenant, by agreement under seal, and the tenant refuses to deliver possession; the landlord is the proper party to institute a proceeding of unlawful detainer to obtain possession." This affirms the right of the vendor, in an executory contract for the sale of land, to bring the suit to obtain the possession. And the inference would seem fair that the converse of the proposition was equally true, that the vendee in an executory contract for the purchase of land, could not bring the suit to obtain the possession.

But when the case of *Middleton* vs. *Harrison* is carefully considered, it will be found to embrace both propositions, substantially. For the learned and able judge of the circuit court of Jackson county, who tried the cause in the court below, instructed the jury substantially to that effect. And judge Moncure in delivering the opinion of the court of appeals, says expressly that, "in regard to the instructions, I think the court did not err in refusing to give those which were asked for by the parties, or in giving those which were given by the court.

Again judge Allen delivering the opinion in the case of *Yancey* vs. *Mauck*, 15 Grat. 306, uses the following language: "As between the vendor and vendee, the latter occupies the

position of tenant at sufferance to the former.    The vendor may assert his legal title, and recover possession of the premises by ejectment, and so disaffirm the executory agreement to sell," &c.    In equity the vendee before he receives his deed is regarded as the owner of the land, and the vendor the owner of the purchase money; but otherwise in law : 2 Tucker's Com., book 3, chap. 21, page 460–1, where it is also said that, "the only remedy now known in a court of law for the breach of that contract, (*i. e.* for the sale of land) is an action for damages."    The case of *Allen* vs. *Gibson* is thought to militate against this doctrine, and admit a recovery of possession in a court of law on an equitable right. But that case simply decided that under the act of 1814, a mortgagee, after forfeiture, may obtain possession of the mortgaged premises by action of unlawful detainer: and in my view of the case, this rather sustains the doctrine as stated by judges Allen and Tucker, than militates against it.    For the mortgagee after default, has a strict legal right as contra-distinguished from a mere equitable right.

Now if the vendee in possession, is but the tenant at sufferance of the vendor, liable to be turned out at pleasure, without even notice to quit, what could it avail the vendee not yet in possession under an executory contract, to recover the possession from his vendor in this action of unlawful detainer, only to be turned out again at the pleasure of his vendor, or to be ejected by the judgment of the court in an action of ejectment by the vendor to regain the possession? There is a marked distinction between courts of law and court of equity in their nature and character, and in their mode of action and the subjects of their jurisdiction.    They have separate spheres of action; and with us the incongruous system adopted in some of our sister States, of mingling the jurisdictions of law and equity, and abolishing all distinction between those tribunals, has never found favor; but has been repudiated when attempted in the legislature.

So long then as we have these two distinct jurisdictions, it would seem most consonant with principle and experience, that each should be confined to its proper sphere, *i. e.*, that

legal rights should be tried and determined in courts of law, and equitable rights heard and decreed in the courts of equity.

The right of the plaintiff in the court below, was a mere equity, arising out of an executory contract to sell and deliver possession. The legal title remained in the defendant below, who refused to execute his contract. For the breach of contract, a court of law will inquire of the damages, and in a proper case, a court of equity will compel specific execution. But it would seem incongruous for a court of law to enforce specific performance, in whole or in part, (for such it would be, *pro tanto*) to recover the possession under the executory agreement in this case, in the proceeding of unlawful detainer. And this view of the case would seem to be strengthened by the provisions of the statute, code of 1860, page 611, sections 20 and 21; and the very stringent rule of construction of that statute, by the court of appeals in the case of *Davis et als* vs. *Feays et als*, 3 Grat., 283. If the equitable rights of the parties could be inquired into and determined in a court of law without that statute, its passage was unnecessary and useless.

Upon the whole then, I conclude that it was not competent for the plaintiff in the court below, to recover the possession upon a mere equitable right arising under the executory contract or title bond in this case; and that therefore, the said title bond ought to have been excluded from the jury as evidence of right to the possession, upon the objection taken to its admisibility by the defendant, Wilson. And the demurrer to the evidence should have been sustained, and judgment rendered thereon for the defendant.

The objection, taken here, by the attorney for the plaintiff in error, that said title bond was not stamped by a U. S. revenue stamp, as required by the act of Congress, does not arise on the record, it not being made to appear by any objection taken at the trial, nor bill of exception nor certificate of the court, that it was not so stamped: 10 Grat,, 1.

HARRISON, J., concurred in the above opinion.

BERKSHIRE, President.    As the question of *title* is not involved in this proceeding, but only the question of *possession*, and as according to the authority of *Allen* v. *Gibson*, 4 Ran., 468, a party who is entitled to the possession as against the defendant, no matter *how*, or in what manner or mode he may have acquired such right, or whether he has ever been in possession or not, is entitled to this remedy for the recovery of the possession; and as the statute gives this remedy in some cases where ejectment will not lie, to wit, in the case of forcible or unlawful entry, I had supposed that a fair construction of the first section of chapter 134 of the Code of 1860, as a remedial statute, would embrace the case of a vendee who, as in the present case, had expressly contracted with the vendor for the *possession* of the premises purchased, though the legal title remained in the vendor; and although by no means certain that the legislature in giving this remedy, did not intend to extend it to such a case, yet, as according to the doctrine declared in the recent cases of *Harrison* v. *Middleton*, 11 Gratt., 528, and *Yancey* v. *Mauck*, 15 Gratt., 300, the vendee is regarded, *at law*, as the mere tenant at sufferance of the vendor holding the legal title, and that the vendor, and not the vendee, is entitled at law to possession, and may recover the same by ejectment, I cheerfully waive my own doubts and defer to these authorities and the opinion and judgment of my brethren in the case.

JUDGMENT REVERSED.