WILLIAM MOORE, Respondent, v. SIMEON BROWN, Appellant.

One who has discovered a mine upon lands belonging to the state, filed the notice prescribed by the act of 1890 (Chap. 411, Laws of 1890), and obtained the consent of the commissioners of the land office, does not thereby acquire a legal title to the mine or the minerals in the land, and so cannot maintain ejectment to recover possession.

The state retains title to the land and the minerals therein so long as they are not mined. The discoverer acquires the right to take out the minerals, a right exclusive as to all the world, and of a duration measured by the existence of the mineral deposit, but until the minerals are taken out of the land they remain the property of the people.

*It seems*, the remedy of the discoverer to protect his rights and prevent an infringement thereon is an action in equity.

(Argued June 9, 1893; decided October 3, 1893.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made November 30, 1891, which reversed a judgment in favor of defendant entered upon a decision of the court on trial at Circuit, and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*J. W. Houghton* for appellant. The plaintiff failed to show title to any such interest in real estate as entitled him to maintain ejectment. (Laws of 1890, chap. 411; *Wiseman* v. *Lucksinger*, 84 N. Y. 31; *Crossdale* v. *Lanigan*, 129 id. 604; *E. S. T. F. Co.* v. *Grant*, 114 id. 40; *Cahoon* v. *Bayard*, 123 id. 298; *Mumford* v. *Whitney*, 15 Wend. 380; *Silsby* v. *Trotter*, 29 N. J. Eq. 228; *Pierrepont* v. *Barnard*, 6 N. Y. 279.) If Wood and Shields acquired only a license, and no interest in the land, the plaintiff, if he acquired anything by transfer from them, had no better title than they had, and he cannot maintain ejectment, for an action of ejectment is an action to recover the immediate possession of real property. (Code Civ. Pro. § 3343; *N. T. Co.* v. *Smith*, 15 Barb. 355; *Mayor, etc.*, v. *U. T. Co.*, 55 How. Pr. 138, 154; *Funk* v.

*Halderman*, 53 Penn. St. 229.) The license granted by the land commissioners to Wood and Shields, notwithstanding the language of the resolution, amounted to nothing more than a mere license which was not transferable. (*Cahoon* v. *Bayard*, 123 N. Y. 298, 302; *Mendenhall* v. *Klinck*, 51 id. 246.) The plaintiff must recover upon the strength of his own title; he may not rely upon any supposed or actual weakness in that of his adversary. (*Roberts* v. *Baumgarten*, 110 N. Y. 380; *Sweet* v. *B., N. Y. & P. R. R. Co.*, 79 id. 293, 297.) If the court shall not concur in the above view, and shall hold that Wood and Shields had such an interest as upon proper conveyance to plaintiff would allow him to bring an action of ejectment, then it is insisted that the nonsuit was proper because defendant showed a superior right to possession. (*Cavalli* v. *Allen*, 57 N. Y. 508; *Shepherd* v. *McCalmont Co.*, 38 Hun, 37; *Funk* v. *Halderman*, 53 Penn. St. 229; *Silsby* v. *Trotter*, 29 N. J. Eq. 228, 551; *Freeman* v. *Freeman*, 43 N. Y. 34; *Austin* v. *Ahern*, 61 id. 6; *Phelan* v. *Brady*, 119 id. 587; *Edwards* v. *Dooley*, 120 id. 540, 553; *Williamson* v. *Brown*, 15 id. 354; *Forbes* v. *Gracey*, 94 U. S. 762; *Patterson* v. *K. M. Co.*, 23 Col. 575.) The General Term begged the question at issue by holding that Wood and Shields owned the mineral and took an estate in fee therein, relying as authority upon the dictum in *Genet* v. *D. & H. C. Co.* (122 N. Y. 505), concluding, therefore, that ejectment was the proper remedy. This court has since repudiated the doctrine of that case as to the interpretation of the lease therein, and hence the reasoning of the court below must fail. (*Genet* v. *D. & H. C. Co.*, 136 N. Y. 593.)

*Richard L. Hand* for respondent. The supposed equity which induced the learned trial judge to non-suit the plaintiff does not exist. (*Cook* v. *N. Y. C. R. R. Co.*, 1 Abb. Ct. App. Dec. 432; *Clemence* v. *City of Auburn*, 66 N. Y. 338; *Morss* v. *Osborn*, 64 Barb. 543.) The deed to the plaintiff was not affected by the possession of the defendant at its date. (*In re Dept. of Parks*, 73 N. Y. 560; *Risley* v. *Rice*, 40

Hun, 585.)   The interest of the plaintiff, being the same which Wood and Shields had derived from the State, is sufficient to maintain ejectment.  (*Marvin* v. *B. I. M. Co.*, 55 N. Y. 538; *Genet* v. *D. & H. C. Co.*, 122 id. 527; 136 id. 593; *Chester Co.* v. *Lucas*, 112 Mass. 424; *Rowan* v. *Kelsey*, 18 Barb. 484; *Jackson* v. *Buel*, 9 Johns. 298; *Jackson* v. *May*, 16 id. 184; *Caldwell* v. *Fulton*, 31 Penn. St. 483; *Caldwell* v. *Copeland*, 37 id. 430; *Sanderson* v. *Scranton*, 105 id. 474.)

GRAY, J.   This was an action of ejectment, brought to recover the possession of a certain mine of garnet in the town of Minerva, in the county of Essex, and the main question is whether the plaintiff had such a legal title, or such an estate in the premises, as would authorize the maintenance of such an action.   At the trial his complaint was dismissed, and that was one of the grounds upon which the motion for nonsuit proceeded.

He was the grantee of the interests of Wood and Shields, who were the discoverers of the garnet deposit.   They had filed and established their claim as such discoverers, and, thereupon, the commissioners of the land office of this state passed a resolution to the following effect: "Resolved, that ...... consent is hereby given to Messrs. Wood and Shields, their successors and assigns, to work the mine or deposit of garnet and other minerals in connection therewith."

The provisions of the statute, under which their proceedings were had and this consent was given, are contained in chapter 411 of the Laws of 1890, and read as follows, viz.:

"Section 1.   All mines and all minerals and fossils discovered, or hereafter to be discovered, upon any lands belonging to the people of this state, are and shall be the property of the people, subject to the provisions hereinafter made to encourage the discovery thereof.   Any citizen of this state who shall have discovered, or who may hereafter discover, any valuable mine or mineral upon said lands, and shall file the notice in this title required, shall be entitled to work such mine, and he and his heirs and assigns shall have the sole benefit of all pro-

ducts therefrom, upon payment into the state treasury of a
royalty of two per centum of the market value of such
products.    *    *    *"

"§ 2. Nothing contained in this title shall   *   *   *   be
construed to give any person a right to enter on or break up
the lands of any other person, or of the people of the state,
or to work any mine in such lands, unless the consent in writ-
ing of the owner thereof, or of the commissioners of the land
office, where the lands belong to the people of this state, shall
be previously obtained."

It seems that before the proceedings were taken, which
resulted in the passage of the above resolution, Wood and
Shields had supposed the mineral deposit to be upon the land
of a private individual, named Martin Conners, and, having
obtained from him the right, were engaged in mining it.
While so engaged, they made a contract with this defendant,
purporting to sell to him certain mining rights in the property.
When they ascertained that the mine was on state lands, and
after they had obtained from the land office commissioners the
consent above mentioned, Wood and Shields then made the
grant of their interests to the plaintiff. The defendant, how-
ever, claiming somehow under his previous contract with
Wood and Shields, was upon the lands and working the
mine, and the plaintiff brought this action to eject him.

Unless, by the force of the statutory provisions and the reso-
lution of the land office commissioners, his grantors had acquired
either a legal title to the premises described, or, what would
be equivalent, were the grantees of the mine, or minerals in
the land, an action of ejectment was not maintainable. What
resulted from the action of the commissioners was a contract
between the state and Wood and Shields; which invested them
with certain exclusive rights, to be enjoyed and exercised upon
the property of the state; but, as I read the statute, that con-
tract gave them no legal estate in the premises, nor operated,
in any way, as a grant of the minerals in the land. It
amounted to a grant of a privilege to enter upon the state
lands and to work the mine upon them and to possess only the

products. It is hard to see how the terms employed by the legislature can be held to express any intention to grant any estate in lands or minerals. It is plain from the statute in question that the title to all mines and all minerals upon the lands of the state is reserved to the people. They "are and shall be the property of the people" the act explicitly declares ; but, to promote their discovery, it is provided that any citizen who discovers them "shall be entitled to work the mine, and he and his heirs and assigns shall have the sole benefit of all products therefrom," upon making payment of royalty upon their market value. What is there in the language of this enactment which entitles the discoverer of a mine upon state lands to anything more than the mere right or privilege to take out the minerals and to retain the benefits which may accrue from marketing the product ? And how can we imply from the action of the land office commissioners anything like a grant of any estate in the property, when they formally grant merely a consent to work the mine ? To construe such a grant we should have not merely to strain unnaturally the words of the statute, but we should have to imply an estate in lands, against the express reservation of the property in the mines and minerals to the People. That neither can nor should be done.

The words of the statute are not ambiguous and they do not conceal the intention of the framers. It is quite unnecessary, for any purpose, to give to them any other meaning or force than that which consists with the very clear purpose on the part of the legislature to grant only a right or privilege and to part with the title of the state only with respect to minerals which are extracted and marketed by the miner. In this view, we are supported by an opinion of the King's Bench, delivered by Chief Justice ABBOTT in a case I have been able to find and which seems very much in point. I refer to *Doe* v. *Wood* (2 Barnw. & Ald. 724). That was an action of ejectment, where plaintiff claimed under a formal indenture, granting the right to search for, dig, work and mine tin ore and all other minerals in the grantor's land and to

raise and make merchantable and dispose of the same, to the grantee's own use. This was held to operate as a license merely; where the grantee had no grant of the ores and metals in the land and "had a right of property only as to such part thereof as, under the liberties granted, should be dug and got," and that the grantee "had no estate or property in the land itself, or any particular portion thereof, or in any part of the ore ungot therein." It was held that the grantee's right was "very different from a grant or devise of the mines or metals or minerals in the land" and that an action of ejectment was not maintainable.

I am not aware that there is any case in this state much in point; but reasoning upon the language used by the legislature and upon the description of the rights which shall be accorded to a discoverer, I see no other conclusion possible than that what he obtains from the state is the grant of a mere right, or incorporeal privilege, to take out the mineral found within the land of the state, and to have, as his own, only what is so taken out. The act secures to him a right, in that respect, exclusive as to all the world and of a duration measured by the existence of the mineral deposit and by his compliance with conditions expressed and implied. Such rights are fully cognizable in courts of equity, and resort to them, for purposes of protection against any infringement of those rights, could not fail of accomplishing all that is requisite. As the plaintiff had no estate in the land, or in the mine upon the land, he could not maintain ejectment against the defendant, and, for that reason, his complaint was properly dismissed.

The order of the General Term should be reversed and the judgment entered at the Circuit should be affirmed, with costs at the General Term and in this court.

All concur, except Earl, J., not voting.

Order reversed and judgment accordingly.