(Decided January 4th, 1898).

---

## E. N. GARDNER & CO. *vs.* JAMES H. GAMBRILL.

*Insolvency—Adjudication of Insolvency After Execution of an Assignment for Benefit of Creditors by Debtor—Rights of Trustee Under Such Assignment and of a Trustee in Insolvency.*

*Code*, Art. 47, sec. 22, provides, that if a merchant or trader, &c., shall suspend payment of his negotiable paper and fail to resume the same within twenty days, he shall be deemed to have committed an act of insolvency and be liable to be adjudicated an insolvent at the instance of creditors. Defendant in this case, being a trader, &c., after issuing negotiable paper and before the maturity thereof, executed a general assignment for the benefit of his creditors. *Held*, that he was liable to be adjudicated an insolvent, notwithstanding the execution of such assignment and his ceasing to be a trader before the petition in insolvency.

The Act of 1894, ch. 568,, enacts that the provisions of the insolvent law shall not impair a *bona fide* deed executed by a party for the

equal benefit of his creditors.  *Held*, that although the trustee under such voluntary deed has the right to administer the property conveyed under it, yet the grantor therein may still be proceeded against under the insolvent law, and the trustee appointed in insolvency will have power to claim property of the debtor which the voluntary trustee does not possess.

The trustee under an assignment for the benefit of creditors has no right to vacate deeds made in fraud of his creditors by the assignor before the assignment, while a trustee in insolvency, representing all the creditors, has such power.

Appeal from an order of the Circuit Court for Frederick County (LYNCH, J.), dismissing the petition asking that the appellee be adjudicated an insolvent.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*George Whitelock* (with whom were *John C. Motter* and *Samuel D. Schmucker* on the brief), for the appellants.

*John S. Newman* (with whom was *Charles W. Ross* on the brief), for the appellee.

BRYAN, J., delivered the opinion of the Court.

On the ninth day of June, eighteen hundred and ninety-seven, Gardner and Company filed a petition in insolvency against James H. Gambrill.  It was alleged that the petitioners on the fifth day of February, eighteen hundred and ninety-seven, accepted an accommodation draft drawn on them by the respondent for the sum of nine hundred dollars, payable sixty days after date, and that the petitioners have paid the same.    It was further alleged that on the fourteenth day of January, eighteen hundred and ninety-seven, the respondent drew an accommodation draft on J. H. Sherbert and Company in favor of the Central National Bank of Frederick, for the sum of one thousand dollars, payable sixty days after date, and that Sherbert and Company accepted the same, but that neither Sherbert and Company nor the respondent have paid it, although more than twenty days have elapsed since its maturity.    The answer sets forth that

Gambrill, on the fifteenth day of March of the same year, executed to certain trustees deeds of trust conveying all his property for the benefit of his creditors without any preference or priority, and the said deeds were executed and delivered about ten o'clock in the morning. This was on the day when the Sherbert draft fell due. The case was heard by the Court on petition and answer. It was dismissed by the Court.

The defence maintains the theory that Gambrill had ceased to be a merchant and trader when he made the defaults alleged against him, and that he was not therefore subject to the provisions of the twenty-second section of the insolvent law, as amended by the Act of 1896, chapter 446. This section enacts that if any merchant or trader (or other person named therein but not necessary now to mention) shall suspend payment of his negotiable paper and fail to resume the same within twenty days, he shall be deemed to have committed an act of insolvency. The twenty-third section make such merchant or trader liable to an adjudication of insolvency at the suit of any creditor whose debt shall amount to two hundred and fifty dollars, provided he shall file his petition within four months after the act of insolvency. The same section contains a provision that if a banker or broker shall fail for twenty days to pay any depositor, on demand lawfully made, he shall be deemed to have committed an act of insolvency. It was the object of this section to place these classes under severe penalties for their defaults, so as to compel them to comply punctually with their duties in the respects which are mentioned. It could not have been intended that a banker who had received a depositor's money should have the power of evading the penalty of his misconduct by the simple act of retiring from business. If such be the construction of the statute it affords to the depositor a very precarious protection. It might also be said to be merely illusory. And the same may be said in reference to merchants and traders. They are embraced in the same section, and are evidently to be

dealt with in the same manner. The penalty is imposed on the persons included in these classes, because of a failure to discharge commercial liabilities. Gambrill, when he drew the accommodation bill on Gardner and Company, by so doing entered into a contract with them that if they would pay it, he would reimburse them. And when he drew a bill of the same character on Sherbert and Company, and had it discounted by the bank, his contract with the bank was that he would take it up, if Sherbert and Company should fail to pay it. The obligation of these contracts was in no manner impaired by the circumstance that the contracting party had ceased to be a merchant. The twenty-second section of the statute was intended to compel the prompt performance of the second of these contracts. And it is impossible to find in it any intimation that the delinquent was authorized to defeat its operation by ceasing to be a merchant. This question has arisen on other statutes with similar provisions. From very many decisions of the same purport, it is sufficient to cite two. In *Bailie* v. *Grant*, 9 Bingham, 121, the House of Lords referred the question to all the Judges ; and in their unanimous opinion it was said : " It has also been established beyond dispute, that a petitioning creditor's debt contracted during the trading of the debtor will support a commission taken out against him on an act of bankruptcy committed after the trading has ceased. This point has been settled to be law by various decisions, commencing with that of *Heylor* v. *Hall*, and ending with that of *ex parte Bamford.*" In *ex parte Griffiths*, 3 DeG. M. & G., page 176, the LORD JUSTICE KNIGHT BRUCE said: " I apprehend that by the spirit and intent of the bankrupt laws, according to principle and authority, the rule is established that a trader who after becoming indebted leaves off trading, is not to be heard to say to his creditor that the trading has been left off, if a question arises whether the debtor can or cannot be as a trader made a bankrupt. He added that he believed no lawyer would now dispute this proposition."

The Act of 1894, chapter 568, declares that the insolvent law shall not impair any *bona fide* deed which conveys all the property of a grantor for the equal benefit of his creditors without preferences.  It, however, recognizes the right of any creditor to proceed against the debtor under the provisions of the insolvent law after the execution and recording of the deed, but gives to the trustee under the voluntary deed the right to administer the trusts created by it, without any interference by the trustee in insolvency.  It would not be in the power of the voluntary assignee to set aside any deed which his grantor might have made in fraud of creditors previously to the assignment.  This is firmly settled.  *Brown* v. *Deford*, 83 Maryland, 297, and cases there cited.  The trustee in insolvency represents the creditors, and it is his duty to claim in their behalf all property which ought to be subjected to the payment of the debts due to them ; whether it was obtained from the insolvent by a fraud practiced on him, or whether he himself conveyed it away in fraud of his creditors.  We do not know that this principle has ever been doubted.  Certainly it has never been questioned in this Court since the decision in *Gardner* v. *Lewis*, 7 Gill, 378 ; and in a great many cases it has been recognized as well established.  It is not shown that any disposition of his property has been made by Gambrill in derogation of the rights of his creditors, and therefore it does not appear that the trustee in insolvency would be able to recover anything.  But the time to consider this question has not arrived, and it could not be decided on this petition.  Under it the only question which it is competent to decide is whether Gambrill has committed the act of insolvency which is alleged.  If he has committed it, the statute requires an adjudication of insolvency.  If a trustee is appointed it will be his duty to proceed on such information as he may have ; and when a question of subjecting property to the claims of creditors is brought before the Courts, it will be seasonably decided.  At present there is no jurisdiction to entertain the question.

We think that an act of insolvency has been committed and that there ought to be an adjudication accordingly. We will therefore reverse the order of the Court below with costs in both Courts and remand the case in order that an adjudication of insolvency may be made.

*Reversed and remanded.*

(Decided January 4th, 1898).