# CHARLOTTE R. NICOLAI *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Ejectment—Incorporeal Hereditament—Purchase of a Bridge and Abutments Under a Decree in a Mechanics' Lien Case.*

Ejectment does not lie for an incorporeal hereditament, or for an interest in land created by a license.

A railway company constructed the abutments of a bridge upon certain land under a license from the owner and not under a claim of title. Upon a bill to enforce a mechanics' lien against the bridge, a decree was passed directing a sale of the "bridge and masonry;" and they were sold and conveyed to the plaintiff by that description. In an action of ejectment, plaintiff's declaration claimed the land covered by the abutments of the bridge and the abutments resting thereon. *Held*, that the conveyance of the bridge and masonry to the plaintiff did not pass any title to the land upon which they rested, or constitute the beginning of an adverse possession, and that an action of ejectment cannot be maintained to recover the bridge and abutments.

Appeal from the Court of Common Pleas (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*S. S. Field* (with whom were *Gill & Preston* on the brief ), for the appellant.

*Edgar Allan Poe, Deputy City Solicitor* (with whom was *W. Cabell Bruce, City Solicitor*, on the brief ), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an action of ejectment of an unusual character. The declaration contains three counts, in the first of which the plaintiff seeks to recover "the bridge and masonry at Merryman's lane, located adjacent to the line of the Maryland and Pennsylvania Railroad Company, in the city of Baltimore."

In the second count, the plaintiff claims "all that lot of ground belonging to the plaintiff, lying in the city of Baltimore, and described as follows: the land covered by the abutments of the bridge over the Maryland and Pennsylvania Railroad Company at Merryman's lane, and the abutments resting thereon."

In the third count, the claim is for "all that lot of ground belonging to the plaintiff lying in the city of Baltimore, and described as follows: the land covered by the western abutment of the bridge over the Maryland and Pennsylvania Railroad at Merryman's lane and the abutment resting thereon." Issue was joined on the customary plea denying the commission of the wrongs alleged. The plaintiff offered in evidence the proceedings in an equity cause in the Circuit Court for Baltimore County between Charles H. Nicolai & Co. and The Baltimore and Swan Lake Railroad Company, to enforce a mechanics' lien which Nicolai & Co. had filed against the bridge and masonry mentioned in the declaration, under sec. 22 of Art. 63 of the Code of Maryland. This proceeding resulted in a decree for the sale of "said bridge and masonry mentioned in the proceedings," and the appointment of W. F. Mitchell and Bernard Carter as trustees to make the sale. This decree cov-

ered also other bridges embraced in the lien filed, and the
trustees advertisement of sale covered all these. The bridge
in question here was described simply, as "The bridge and
masonry at Merryman's lane," and the other bridges were
described in like terms, neither the decree nor the advertise-
ment making any reference to the land on which the bridges
were erected, but the advertisement stated that the bridges
and masonry could be easily removed, and the material used
for building purposes. All the bridges included in the decree
were sold to the present plaintiff, the sale was duly ratified,
and the trustees conveyed the property sold, to the plaintiff,
describing the bridge now in question, as "the bridge and ma-
sonry at Merryman's lane, located along the line of the Bal-
timore and Swan Lake Railway in Baltimore County," but it is
now within the limits of Baltimore City. The plaintiff proved
that the masonry consisted of two abutments on which the
bridge rested, each abutment being of stone, forty feet in
heighth and the same in length, the bridge span being about
one hundred feet over the Md. and Pa. R. R. and over Stony
Run next to the eastern abutment. She also offered evidence
tending to prove that Merryman's lane crossed Stony Run
about fifteen feet north of this bridge, before the erection of
these abutments in 1873 and that neither of them stands upon
any part of what was Merryman's lane, before their erection,
and that the bridge was put in place in 1880. James H. Smith
then testified that the western abutment stands upon land that
belonged to David Carroll at the time the abutment was
erected, and that the eastern abutment stands upon what was a
part of Merryman's lane, which at that point was the bound-
ary of Carroll's land, and that there was no written agreement
between Carroll and the Swan Lake Railway Company for the
erection of the western abutment. She also offered to prove
a verbal agreement between the parties named, under which
the western abutment was erected on Carroll's land in consid-
eration of the erection by the company of a wall on the east
side of the railroad track, thereby changing the course of
Stony Run which formerly ran on the west side of the railroad,

but this offer was rejected by the Court upon the defendant's objection, and the first exception was taken to this ruling.

The plaintiff then put in evidence ch. 314 of 1868, and ch. 272 of 1872 of the laws of Maryland, the first being the Act incorporating the Baltimore and Swan Lake Railway Company, and the latter being an amendment of the former, and then proved that the bridge and abutments were worth about $4,000, and that she had never received anything for them from any source, and then closed her case, upon which the Court granted a prayer offered by the defendant taking the case from the jury, and directing the verdict for the defendant, to which ruling the second exception was taken. The Court held that under the decree to enforce the mechanics' lien, the trustees were only authorized to sell, and only sold and conveyed, the bridge and abutments, and not the ground upon which these stood, and that the bridge and abutments could not be recovered in ejectment. The plaintiff, however, contends that under the description, "bridge and masonry," the ground upon which the abutments rested passed under the trustees deed, without being expressly mentioned, in support of which he cites, 4 *Enc. of Law*, 2 ed., 919 and 941; 5 *Cyc.* 1052 and 1066; *Daniel* v. *Athens*, 55 Geo. 609; *Bardswell* v. *Jamaica*. 15 Vt. 438; *Hawkins* v. *Wilson*, 1 W. Va. 117 and *Tolland* v. *Willington*, 26 Conn. 583.

We have carefully examined these authorities, and it does not appear that any of them were actions of ejectment. All of these, and others to like effect, are cases in which were involved only the duty of maintaining the approaches to the bridge, or the liability for injuries received in accidents occurring thereon. In some of them, expressions are used which seem to give color to the contention made, but which, when carefully considered, cannot be regarded as so intended. Thus in *Daniel* v. *Athens*, 55 Geo., *supra*, the Court held that a contiguous embankment necessary to make access to a bridge, so as to pass teams and wagons over it, is a part of the bridge, and *title* to the bridge covers such embankment." But this was an action for damages for injuries received from negligent

maintenance of the embankment, in which *possession and control* only were involved, and not *legal title*, and we must assume that the Court designed the language used, to refer only to such *qualified title,* as may be predicated of rightful possession, and not to *legal title* in the sense required in actions of ejectment. If designed however, to be understood in the latter sense the language is *obiter dictum.* So also in *Hawkins* v. *Wilson, supra,* it was said, "the description in a summons of unlawful detainer of premises, as a certain house and appurtenances, imports land within the meaning of ch. 134 of the Code of 1860, to the extent of the land on which the house stands, and the garden attached, but no further:" but the Court proceeded to observe that "the question of *title* was not involved but only possession."

In the present case there is not only no evidence of any conveyance by anyone of the land upon which either abutment stands, but the plaintiff's witness proved that there was no written agreement between Carroll and the Railway Company with reference to the land upon which the western abutment was built and there is an entire absence of any evidence as to any authority from any source for the erection of the eastern abutment which stands upon what was a part of Merryman's lane. There was therefore, no more, at most, than a parol license for the erection of these abutments, creating an incorporeal hereditament for which ejectment cannot be maintained. The cases so holding are numerous. In *Moore* v. *Brown,* 139 N. Y. 127, the discoverer of a garnet mine upon State lands filed a claim under a statute which entitled him as discoverer to work such mine, and provided that he, *his heirs and assigns,* should have the sole benefit of all products therefrom, upon payment of a certain royalty to the State, and that the Commissioners of the Land Office should execute a contract, accordingly, which they did. Moore was the assignee of the discoverer and brought ejectment. The Court held that the statute and resolution of the Land Commissioners neither conveyed a legal title to the premises described, nor anything equivalent thereto, but was a mere license, and no interest in

the land, and therefore ejectment would not lie; and cited *Doe v. Wood*, 2 Barnwall and Alderson, 724, where plaintiff claimed in ejectment under a formal indenture granting the right to search for, dig, work, and mine minerals in the grantor's lands described in the indenture, but this was held to operate as a license only.   In the latter case, CHIEF JUSTICE ABBOTT said, "It was contended that words importing an intention in the grantor to divest himself of the possession for a time, and vest it in another, operate in law as a lease, and that words showing such intent appear in different parts of this deed, such as 'the land hereby granted,' 'the ground and premises hereby granted,' and 'the land or ground hereby granted,' which occur in some of the clauses and covenants of the deed, and among others in the clause of re-entry, upon which special reliance was placed.  *  *  *  But we think these words are not sufficient to vary the construction that must be given to the words of the granting part of this deed, and are not sufficient to extend the grant by converting the thing granted from incorporeal to corporeal, which would carry the rights of the grantee much further than the grant of a license or authority extends."

So in *Petroleum Co.* v. *Bliven Co.*, 72 Pa. St. 173, which was an action on the case under an agreement to lease the exclusive right of boring for oil upon certain described lands, the Court through JUDGE SHARSWOOD held, 1st, that the grant was of a mere incorporeal heriditament; 2nd, that case was the proper remedy; and 3rd, that ejectment certainly could not have been maintained; and the same principle was declared in *Caldwell* v. *Fulton*, 7 Casey, 480; in *Clement* v. *Youngman*, 40 Pa. 344, where it was said that where one grants a mere incorporeal hereditament "it can never be intended the owner should be ejected from the soil," in *Richardson* v. *Louisville R. W.*, 169 U. S. 128, and in *Crocker* v. *Fothergill*, 2 Barnwell and Alderson 661, where JUSTICE HOLROYD said, "Although an ejectment will not lie for a liberty and privilege alone, which is a mere incorporeal hereditament, yet when an ejectment is brought for land, and liberties and privileges are appurtenant

to the land, the latter may be recovered with the land, because you may recover in ejectment all incorporeal things included in the demise though an ejectiment will not lie for the incorporeal things alone." In *Moore* v. *Brown*, the statute and resolution gave the right to the discoverer, *his heirs and assigns*, but the Court did not allow these words to import a grant of land, nor can the same words used in the decree in this case be given that effect. Their presence in the decree was probably due to the use of a printed blank for general use, but however this may be, the trustees' conveyance was made to Charlotte R. Nicolai alone, and not to her, her heirs or assigns, as it would have been if they had deemed themselves authorized by the decree to convey the land on which the abutments stood.

If, in the proceedings to enforce this lien, it was designed to extend the lien to land, assuming this to have been possible under the Mechanics' Lien Law, the necessary steps should have been taken for this purpose under secs. 6 and 7 of that law providing for designation of the boundaries, though we are not to be understood as intimating this could have been done, since it was decided in *Stebbins* v. *Culbreth*, 86 Md. 658, where a mechanics' lien upon a steam heating apparatus, or machine was under consideration, that only such a machine as had not lost its character as a movable chattel, was within the purview of sec. 22 of Art. 63, which gives the mechanics' lien upon "machines, wharves and bridges."

We may observe here that secs. 69 to 82 of Art. 75 of the Code, all of which relate to the action of ejectment, speak uniformly of land, and nothing else as recoverable in ejectment. But there is no repugnancy or inconsistency between these provisions of our Code and those decisions here relied on by the plaintiff to establish that ejectment will lie for other things than land, such as an upper room in a building, a stall in a stable, a pew in a church, a coal mine, a crop of grass or a pool of water. Without passing upon the particular cases thus mentioned, the principle underlying them all, we apprehend, will be found to be that the grantee took under the

grant, some estate or interest in land; in many of them under deeds—or through undisputed, or established adverse possession of the property claimed.    Taking the case of *Gilliam* v. *Bird*, 8 Iredell's Law Rep. 250, cited by the appellant, as an illustration of all, we find that the grantor bargained and sold "all my right, title and claim to the building known as Hayward's shop, and all interest I may have had to the ground occupied by the house."    JUDGE BATTLE said, "The defendant assumes that a house separate from the ground on which it stands is personal property, but this is not so.    The ownership of land is not confined to the surface, but extends indefinitely upwards and downwards.    An upper chamber of a house may be held separately from the soil on which it stands, and ejectment will lie to recover it."    The principle applicable in the case of a mine is well stated in 10 *Ency. of Law*, 2 ed. 477, thus, "Where the grant by its terms does not purport to demise the lands or the minerals therein, but operates only as a license to dig and mine throughout the lands, ejectment will not lie unless he has actually opened and worked the mine, for until then the right is incorporeal."    In the case before us here, the erection of the abutments· is not equivalent to the opening and working of the mine, and does not convert the incorporeal right into a corporeal right, as the opening of the mine does under the English cases.    When that is done, there arises a right to remove and dispose of that part of the soil so mined, but the mere use of the surface of the land in erection of the abutments creates no right in or title to any part of the soil.

So in the case of a crop of grass, it is said ejectment will lie because a grant of herbage implies a particular interest in the soil to mature the herbage, though the soil does not pass under the grant.    And as to the pool of water ,cited by the appellant from Yelverton 143, reference to that case shows that "of land under the water does not belong to the plaintiff, ejectment will not lie."

In *Partridge* v. *Independent Church of Baltimore*, 39 Md. 631, a lot in a cemetery was purchased in 1821 and held under

a certificate which stated that said lot "is hereby granted and conveyed by said church to Eaton R. Partridge, his heirs and assigns forever." In 1871 the cemetery was sold under a decree of Court, having ceased to be suitable for burial purposes, and the remains interred in the lot mentioned were removed by the family, but the vault was not removed, and was reserved from sale by the trustees with the right to the family to remove it; but they declined to do this and demanded out of the proceeds of sale a sum sufficient to construct a similar vault elsewhere. This petition was dismissed, and in affirming that order, the Court said "The lot holder purchased a license, nothing more, irrevocable as long as the place continued a burial ground, but giving no title to the soil. Whether it was an incorporeal hereditament descendible, or passed on his death to his personal representatives, it is unnecessary to decide, though while the license continued he could, perhaps, bring trespass or case for any invasion or disturbance of it, whether by the grantors or by strangers. * * * All monuments *and erections* capable of being removed, placed on the burial lot under a license like the present, would be regarded as the *personal property* of the lot holder, and he would have : the right to remove the same upon the lot ceasing to be used for burial purposes." This case is entirely in line with the cases already cited from other jurisdictions, so far as the nature and effect of a mere license is concerned, though special provision is made by sec. 92 of Art. 16, for the sale under decree in equity of burial grounds which have ceased to be used for burial purposes, and for the distribution of the proceeds of sale among the parties interested.

We cannot find any legally sufficient evidence of adverse possession by the plaintiff of the land here in question. The original entry by the railway company for the construction of the abutments was under a mere license, and not under claim of title. The proceedings under the Mechanics' Lien Law, in the form in which they were conducted, could *per se* originate no claim of title to the land, and mere ownership of the bridge and abutments by purchase under that decree, neither created

any title to the land, nor constituted any evidence of the beginning of adverse possession. The record discloses no act of the plaintiff inconsistent with her holding under the original license, nor indicative of any purpose on her part to claim by adverse possession.

In *Gamble* v. *Horr*, 40 Mich. 562, cited by the plaintiff, the act relied on was actual enclosure and occupation of the premises. And this is the principle applied in *Hiss* v. *McCabe*, 45 Md. 83, where Murray, being then in the actual occupation of a house, re-built one of the walls, and in doing so extended it nine inches beyond his line, and continued to occupy the dwelling without interruption for more than twenty years thereafter, and his occupation of the nine inches was held to give title by adverse possession.

If this plaintiff had enclosed this land and abutments, or had erected dwellings upon them, or had torn down the abutments and erected houses upon the land formerly occupied by them, and had occupied such houses by tenants or in person, a different case would be presented. But we can perceive no act done by her indicating her purpose to claim title to the land.

It follows from what we have said that we find no error either in the ruling upon the evidence, or in granting the defendant's prayer.

> *Judgment affirmed with costs to the appellee above and below.*

(Decided March 22nd, 1905.)